**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>ALFREDO ENOS LANDEROS,<br>*Defendant-Appellant*. | No. 17-10217<br><br>D.C. No.<br>4:16-cr-00855-<br>RCC-BGM-1<br><br>OPINION |

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted September 12, 2018
San Francisco, California

Filed January 11, 2019

Before: Marsha S. Berzon, Johnnie B. Rawlinson, and
Paul J. Watford, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Criminal Law

Reversing the district court's denial of a motion to suppress evidence obtained as a result of a traffic stop, the panel held that law enforcement officers may not extend a lawfully initiated vehicle stop because a passenger refuses to identify himself, absent reasonable suspicion that the individual has committed a criminal offense.

The panel recognized that *Rodriguez v. United States*, 135 S. Ct. 1609 (2015) (holding that an officer may conduct certain unrelated checks during an otherwise lawful traffic stop but may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual), at least partially abrogated *United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2008) (holding that an officer did not transform a lawful traffic stop into an unlawful one when, without reasonable suspicion, he took a break from writing a traffic citation to ask the driver about a methamphetamine laboratory and obtain the driver's consent to search the his truck). The panel held that because the district court's approval of the duration of the stop in this case was based on *Turvin* and disregarded *Rodriguez*, it was premised on legal error.

Observing that the record does not demonstrate that the officer had a reasonable suspicion that the defendant was out past his curfew or drinking underage, the panel held that any

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

extension of the traffic stop to investigate those matters was an unlawful seizure.

Based on the plain text of Ariz. Rev. Stat. Ann. § 13-2412(A), the panel rejected the government's contention that the defendant's refusal to identify himself provided reasonable suspicion of the additional offenses of failure to provide identification and failure to comply with law enforcement orders.

Because the police could not lawfully order the defendant to identify himself, the panel explained that the defendant's repeated refusal to do so did not constitute a failure to comply with an officer's lawful order under Ariz. Rev. Stat. Ann. § 28-622(A). The panel concluded that there was therefore no justification for the extension of the detention to allow the officers to press the defendant further for his identity.

The panel held that the bullets the defendant was convicted of possessing, only because he was ordered from the car as part of the unlawfully extended seizure and subsequently consented to a search of his pockets, cannot be introduced at trial. The panel wrote that because the stop was no longer lawful by the time the officers ordered the defendant to leave the car, the validity or not of the exit order does not matter.

The panel addressed in a concurrently filed memorandum disposition the defendant's challenge to the district court's denial of his motion to dismiss the indictment.

**COUNSEL**

Lee Tucker (argued), Assistant Federal Defender; Jon M. Sands, Federal Defender; Federal Public Defender's Office, Tucson, Arizona; for Defendant-Appellant.

Charisse Arce (argued) and Angela W. Woolridge, Assistant United States Attorneys; Elizabeth A. Strange, First Assistant United States Attorney; Robert L. Miskell, Appellate Chief; United States Attorney's Office, Tucson, Arizona; for Plaintiff-Appellee.

**OPINION**

BERZON, Circuit Judge:

Our question is whether law enforcement officers may extend a lawfully initiated vehicle stop because a passenger refuses to identify himself, absent reasonable suspicion that the individual has committed a criminal offense. We conclude that they may not do so. As a result, we reverse.[1]

**I.**

Early in the morning of February 9, 2016, police officer Clinton Baker pulled over a car driving 11 miles over the speed limit. The stop occurred on a road near the Pascua Yaqui Indian reservation. Alfredo Landeros sat in the front passenger seat next to the driver. Two young women were in

---

[1] Appellant also challenges the district court's denial of his motion to dismiss the indictment based on alleged police abuses after his arrest. We address that challenge in a concurrently filed memorandum disposition.

the back seat. The driver apologized to Officer Baker for speeding and provided identification.

Officer Baker wrote in his incident report and testified that he smelled alcohol in the car. The two women in the backseat appeared to him to be minors, and therefore subject to both the underage drinking laws and the 10:00 p.m. Pascua Yaqui curfew.[2] According to the two women's testimony, Officer Baker requested their identification and explained that he was asking because they looked younger than 18 years old "and it was past a curfew." The two women—who were 21 and 19 years old—complied.

As he stated at the suppression hearing, Officer Baker did not believe that Landeros was underage, and he was not. Nonetheless, Officer Baker, in his own words, "commanded" Landeros to provide identification. Later, Officer Baker explained it was "standard for [law enforcement] to identify everybody in the vehicle." Landeros refused to identify himself, and informed Officer Baker—correctly, as we shall explain—that he was not required to do so. Officer Baker then repeated his "demand[] to see [Landeros's] ID." Landeros again refused. As a result, Officer Baker called for back-up, prolonging the stop. Officer Frank Romero then arrived, and he too asked for Landeros's identification. The two officers also repeatedly "commanded" Landeros to exit the car because he was not being "compliant."

Landeros eventually did leave the car. At least several minutes passed between Officer Baker's initial request for

---

[2] Officer Baker is a police officer with the Pascua Yaqui Police Department who has authority to enforce both the Pascua Yaqui tribal code and Arizona state laws.

Landeros's identification and his exit from the car, although the record does not reflect the exact length of time.

Officer Baker testified that, as Landeros exited the car, he saw for the first time pocketknives, a machete, and two open beer bottles on the floorboards by the front passenger seat. Arizona prohibits open containers of alcohol in cars on public highways, Ariz. Rev. Stat. Ann. § 4-251. Officer Baker then placed Landeros under arrest. Consistent with Officer Baker's testimony, the government represented in its district court briefing that Landeros was arrested both for possessing an open container[3] and for "failure to provide his true full name and refusal to comply with directions of police officers." *See* Ariz. Rev. Stat. Ann. § 13-2412(A) ("It is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer who has lawfully detained the person based on reasonable suspicion that the person has committed, is committing or is about to commit a crime."); *id.* § 28-622(A) ("A person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic.").

The officers handcuffed Landeros as soon as he exited the car. Officer Romero asked Landeros if he had any weapons; Landeros confirmed that he had a knife in a pocket. Officer Romero requested consent to search Landeros's pockets, and Landeros agreed. During that

---

[3] We do not reach the question whether, if the seizure were otherwise lawful, law enforcement could have lawfully detained and arrested Landeros based on the open container of alcohol seen where he had been sitting. He was never charged with that offense.

search, Officer Romero found a smoking pipe and six bullets in Landeros's pockets.

Two and a half months later, Landeros was indicted for possession of ammunition by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2). He moved to suppress the evidence based on the circumstances of the stop, and also to dismiss the indictment based on alleged abuse by the police officers after the search. The magistrate judge recommended the district court deny both motions, and it did so in a single sentence order. Landeros then entered into a plea agreement that preserved his right to appeal the denials of the two motions. The district court accepted the agreement and sentenced Landeros to 405 days in prison and three years of supervised release.

## II.

This case implicates two doctrines, one concerning the circumstances under which law enforcement can prolong a stop, and the other governing when law enforcement can require a person to identify himself.

### A.

*Rodriguez v. United States* held that "[a]n officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop. But . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." 135 S. Ct. 1609, 1615 (2015). In that case, a police officer stopped Rodriguez for a minor traffic violation. *Id.* at 1612. The officer collected Rodriguez's license, registration, and proof of insurance, ran a records check on both Rodriguez and a passenger, and questioned the passenger about "where [they] were coming from and where they were going." *Id.* at 1613.

He then returned to the vehicle "to issue [a] written warning" to Rodriguez for the traffic violation. *Id.*

Although the reasons for the traffic stop were, at this point, "out of the way," the officer continued the stop, asking Rodriguez for permission to walk a dog around the vehicle. *Id.* When Rodriguez refused, the officer ordered Rodriguez out of the car and called for back-up. *Id*. Several minutes later, after a deputy sheriff arrived, the officer conducted a dog sniff test, which resulted in the discovery of methamphetamines within the car. *Id.*

Based on the fruits of that search, Rodriguez was indicted for possession with intent to distribute. *Id.* He moved to suppress the evidence on the ground that there was no reasonable suspicion of any offense other than the traffic violation, so the stop was unlawfully prolonged by the dog sniff. *Id.* The district court agreed with Rodriguez that the officer lacked reasonable suspicion to extend the stop after the written warning, but determined that the extension was nonetheless permissible because of its brevity. *Id.* at 1613–14. The Eighth Circuit affirmed. *See United States v. Rodriguez*, 741 F.3d 905, 907–08 (8th Cir. 2014), *vacated and remanded*, 135 S. Ct. 1609.

The Supreme Court vacated the judgment on the basis that law enforcement may not extend a traffic stop with tasks unrelated to the traffic mission, absent independent reasonable suspicion. *Rodriguez*, 135 S. Ct. at 1616–17. In reaching this conclusion, the Court made clear that it would not have mattered if the police officer conducted the dog sniff test before, rather than after, he issued the warning. What mattered was the added time, not at what point, in the chronology of the stop, that time was added. *Id*.

This court so emphasized in *United States v. Evans*, published a month after *Rodriguez*. 786 F.3d 779, 786 (9th Cir. 2015). There, we held that law enforcement impermissibly extended a traffic stop by running an ex-felon registration check unrelated to traffic safety and unsupported by separate reasonable suspicion. *Id*. "That the ex-felon registration check occurred before . . . the officer issued a ticket [stemming from the initial traffic violation] is immaterial," we explained. *Id*. (brackets, citation, and internal quotation marks omitted). "[R]ather, the critical question is whether the check prolongs—*i.e.,* adds time to— the stop." *Id*. (brackets, citation, and internal quotation marks omitted).

We recognize here, for the first time, that *Rodriguez* at least partially abrogated this circuit's previous precedent, *United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2008), upon which the magistrate judge relied and to which the government now cites for support. *Turvin* held that a police officer did not transform a lawful traffic stop into an unlawful one when, without reasonable suspicion, he took a break from writing a traffic citation to ask the driver about a methamphetamine laboratory and obtain the driver's consent to search his truck.  *Id*. at 1098. *Turvin* concluded that because "the circumstances surrounding the brief pause here were reasonable," the extension was permissible despite the absence of reasonable suspicion. *Id.* at 1101–02.

*Rodriguez* squarely rejected such a reasonableness standard for determining whether prolonging a traffic stop for reasons not justified by the initial purpose of the stop is lawful. 135 S. Ct. at 1616. Instead, *Rodriguez* requires that a traffic stop may be extended to conduct an investigation into matters other than the original traffic violation only if the

officers have reasonable suspicion of an independent offense. *Id*.

Dissenting in *Turvin*, Judge Paez wrote, "Because I do not believe that reasonable suspicion supported [the officer's] decision to prolong his traffic stop of Turvin, I would affirm the district court's order granting Turvin's motion to suppress." 517 F.3d at 1104 (Paez, J., dissenting). Judge Paez's dissent aligns with the majority in *Rodriguez*, and so highlights the "tension between *Turvin*, which permits slight prolongations to ask unrelated questions, and *Rodriguez*, which requires independent, reasonable suspicion if [the additional investigation] adds any time to a traffic stop." *United States v. Cornejo*, 196 F. Supp. 3d 1137, 1151 (E.D. Cal. 2016). As *Turvin*'s reasonableness standard cannot be reconciled with the holding of *Rodriguez*, *Turvin* is no longer binding precedent. *See Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc) ("[W]here the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.").

Here, the magistrate judge concluded that the extended stop was permissible because it was "reasonable," looking to *Turvin* rather than *Rodriguez* to guide the inquiry. The magistrate wrote, in relevant part:

> "[W]hether questioning unrelated to the purpose of the traffic stop and separate from the ticket-writing process that prolongs the duration of the stop may nonetheless be reasonable . . . [upon] examin[ation] [of] the

> totality of the circumstances surrounding the stop, and [a] determin[ation] whether [Officer Baker's] conduct was reasonable." *United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008) (internal quotations and citations omitted).

The district court adopted the magistrate judge's recommendation, and therefore his analysis, without comment or explanation. Because it was based on *Turvin* and disregarded *Rodriguez*, the district court's approval of the duration of the stop was premised on legal error.

### B.

Applying *Rodriguez*, we shall assume that Officer Baker was permitted to prolong the initially lawful stop to ask the two women for identification, because he had reasonable suspicion they were underage.[4] But the several minutes of additional questioning to ascertain Landeros's identity was permissible only if it was (1) part of the stop's "mission" or (2) supported by independent reasonable suspicion. 135 S. Ct. at 1615.

A demand for a passenger's identification is not part of the mission of a traffic stop. "When stopping an individual for a minor traffic violation, 'an officer's mission includes ordinary inquiries incident to the traffic stop.'" *Evans*, 786 F.3d at 786 (quoting *Rodriguez*, 135 S. Ct. at 1615). These involve "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," and each shares "the same objective as

---

[4] We really cannot tell whether the suspicion was reasonable as we do not know what the two women looked like.

enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 135 S. Ct. at 1615. The identity of a passenger, however, will ordinarily have no relation to a driver's safe operation of a vehicle.

*Rodriguez* also "recognized that 'an officer *may* need to take certain negligibly burdensome precautions in order to complete his mission safely.'" *Evans*, 786 F.3d at 787 (quoting *Rodriguez*, 135 S. Ct. at 1616 (emphasis added by *Evans* court). But knowing Landeros's name would not have made the officers any safer. Extending the stop, and thereby prolonging the officers' exposure to Landeros, was, if anything, "inversely related to officer safety." *Evans*, 786 F.3d at 787.

## C.

The officers' extension of the stop therefore violated the Fourth Amendment unless supported by independent reasonable suspicion. Reasonable suspicion "exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for *particularized* suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc); *see also Evans*, 786 F.3d at 788. The government argues that Officer Baker had reasonable suspicion of "underage drinking and curfew violations" based on "the smell of alcohol and belief that the back seat passengers were younger than eighteen." An extension of the traffic stop was necessary, the government contends, because Landeros's "own conduct prevented the officers from being able to determine whether he had committed the offenses of underage drinking or curfew violation." But, on cross-examination, Officer Baker stated that Landeros did not look

"underage" to him at the time of the stop. Further, Officer Baker's testimony and reports indicate he asked Landeros for identification because it was "standard" procedure, not because he was concerned about Landeros's age. Indeed, the reports specifically mention that Officer Baker believed the two women were underage, but make no mention of Landeros's age. As a result, the record does not demonstrate that Officer Baker had a reasonable suspicion that Landeros was out past his curfew or drinking underage. Any extension of the traffic stop to investigate those matters was an unlawful seizure.

The government also contends that Landeros's refusal to identify himself "provided reasonable suspicion of the additional offenses of failure to provide identification and failure to comply with law enforcement orders." Arizona law provides:

> It is unlawful for a person, after being advised that the person's refusal to answer is unlawful, to fail or refuse to state the person's true full name on request of a peace officer who has lawfully detained the person based on reasonable suspicion that the person has committed, is committing or is about to commit a crime.

Ariz. Rev. Stat. Ann. § 13-2412(A). By the plain text of the statute, Landeros could not have violated Section 13-2412 because, as already explained, the officers lacked reasonable suspicion, at the time they initially insisted he identify himself, that Landeros had committed, was committing, or was about to commit any crimes, including violating curfew or drinking underage.

Additionally, Arizona Law provides that "[a] person shall not willfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic." Ariz. Rev. Stat. Ann. § 28-622(A). The question that remains, then, is whether law enforcement could *lawfully* order Landeros to identify himself, absent reasonable suspicion that he had committed an offense.

In some circumstances, a suspect may be required to respond to an officer's request to identify herself, and may be arrested if she does not. *Hiibel v. Sixth Judicial District Court* upheld a Nevada "stop and identify" statute, similar to Arizona's, that permitted law enforcement to detain "any person whom the officer encounters under circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime" so as to ascertain that person's identity. 542 U.S. 177, 181–82, 185 (2004) (quoting Nev. Rev. Stat. § 171.123 (2003)). As authoritatively interpreted by the Nevada Supreme Court, the statute required only that a suspect disclose her name—not produce a driver's license or any other document. *Id.* at 185.

The challenge to Nevada's law arose out of Hiibel's arrest for failing to identify himself to law enforcement. *Id.* at 181. Earlier on the day of the arrest, the local sheriff's department received a report of a man assaulting a woman in a truck on a particular road. *Id.* at 180. When an officer arrived at that road to investigate, he found a truck matching the reported description, with a man—later identified as Hiibel—standing outside, and a young woman sitting inside. *Id.* at 180–81. The officer explained to the man that he was investigating a reported fight and repeatedly asked him for identification. *Id.* The officer warned Hiibel that if he did not

provide identification, he would be arrested for refusing to identify himself. *Id*. at 181. Hiibel did not comply, so he was arrested. *Id*. The Court determined this application of the Nevada law permissible, because the request was "'reasonably related in scope to the circumstances which justified' the stop." *Id.* at 189 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)). (The Court did not mention that the officer's request for "identification," which it understood as "a request to produce a driver's license or some other form of written identification," *id.* at 181, demanded more than state law required Hiibel to provide.)

In its opinion, the Court distinguished the circumstances of Hiibel's arrest from those of an earlier case, *Brown v. Texas*, 443 U.S. 47 (1979). *Brown* overturned a conviction under a Texas "stop and identify" law similar to that at issue in *Hiibel*. *Id*. at 49–50. Unlike Hiibel, Brown was stopped, detained, and interrogated about his identity even though there was no reasonable suspicion that he had committed any offense. *Id*. at 51–52; *see also Hiibel*, 542 U.S. at 184 (discussing *Brown*). *Brown* held squarely that law enforcement may not require a person to furnish identification if not reasonably suspected of any criminal conduct. *Brown*, 443 U.S. at 52–53.

In short, *Brown* holds that an officer may not lawfully order a person to identify herself absent particularized suspicion that she has engaged, is engaging, or is about to engage in criminal activity, and *Hiibel* does not hold to the contrary.

As explained above, the officers insisted several times that Landeros identify himself after he initially refused, and detained him while making those demands. At the time they did so, the officers had no reasonable suspicion that

Landeros had committed an offense. Accordingly, the police could not lawfully order him to identify himself. His repeated refusal to do so thus did not, as the government claims, constitute a failure to comply with an officer's lawful order, Ariz. Rev. Stat. Ann. § 28-622(A). There was therefore no justification for the extension of the detention to allow the officers to press Landeros further for his identity.

Evidence obtained as the result of an unconstitutional seizure "is ordinarily tainted by the prior illegality and thus inadmissible, subject to a few recognized exceptions," none of which the government contends apply in this case. *United States v. Gorman*, 859 F.3d 706, 716 (9th Cir. 2017) (internal quotation marks omitted.) Here, "the challenged evidence . . . is unquestionably the product of the illegal governmental activity—*i.e.,* the wrongful detention.'" *New York v. Harris*, 495 U.S. 14, 19 (1990) (internal quotation marks and brackets omitted). The officers discovered the bullets Landeros was convicted of possessing only because he was ordered from the car as part of the unlawfully extended seizure and subsequently consented to a search of his pockets. As a result, the evidence cannot be introduced at trial.

The government repeatedly notes that this court's precedent permits police to "*ask* people [including passengers in cars] who have legitimately been stopped for identification without conducting a Fourth Amendment search or seizure." *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1152 (9th Cir. 2007) (emphasis added). But we need not resolve whether that precedent remains valid after *Rodriguez.* Regardless of whether the *first* request for Landeros's identification was lawful, law enforcement's

refusal to take "no" for an answer was not. *Diaz-Castaneda* does not suggest otherwise.

Landeros also refused to comply with the officers' commands to leave the car. Police officers may order a suspect out of a car during a traffic stop. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). The Supreme Court has extended that rule to passengers detained during a lawful stop. *Maryland v. Wilson*, 519 U.S. 408 (1997). But here, the stop was no longer lawful by the time the officers ordered Landeros to leave the car, as it had extended longer than justified by either the suspected traffic violation or any offense as to which there was independent reasonable suspicion. *See Rodriguez*, 135 S. Ct. at 1616. As Officer Baker had, before Landeros was ordered from the car, impermissibly extended the stop based on Landeros's refusal to identify himself, the validity or not of the exit order standing alone does not matter.

### III.

For the foregoing reasons, we **REVERSE** the district court's denial of Landeros's motion to suppress.