NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

SEP 12 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 22-10052 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-00341-CRB-1 |
| v. | |
| WILLIE WILLIAMS, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted August 23, 2023
San Francisco, California

Before: BUMATAY, KOH, and DESAI, Circuit Judges.
Dissent by Judge BUMATAY.

Willie Williams appeals the district court's denial of his motion to suppress

evidence found in a search of his car following a traffic stop.[1]  We have

jurisdiction under 28 U.S.C. § 1291, and we review de novo the legal conclusions

---

\*        This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.
[1] In its order denying the motion to suppress, the district court stated that it
may provide a longer explanation of its ruling in the event of an appeal, but did not
do so.  The district court summarily denied Williams's motion for reconsideration
of the denial of the suppression motion.

underlying a motion to suppress. *See United States v. Nault*, 41 F.4th 1073, 1077 (9th Cir. 2022). We vacate and remand.

A seizure violates the Fourth Amendment when an officer "extend[s] a traffic stop with tasks unrelated to the traffic mission, absent independent reasonable suspicion." *United States v. Landeros*, 913 F.3d 862, 866 (9th Cir. 2019). "This 'mission' is limited to 'address[ing] the traffic violation that warranted the stop' and 'attend[ing] to related safety concerns.'" *United States v. Evans*, 786 F.3d 779, 785 (9th Cir. 2015) (quoting *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)). "Tasks not related to the traffic mission . . . are therefore unlawful if they 'add[] time' to the stop, and are not otherwise supported by independent reasonable suspicion of wrongdoing." *Id.* (quoting *Rodriguez*, 575 U.S. at 357).

First, the officers' inquiries about consent to search Williams's car and marijuana possession were unrelated to the mission of the traffic stop on June 30, 2019. The officers initiated the stop upon observing that the brake lights of Williams's car were not functioning. The government argues that the mission of the stop was not only to address the traffic violation for non-functioning brake lights, but also to investigate the possibility that the car was stolen, which Officer Roche suspected when the DMV database returned no registration information during his records check.

Notably, the officers' consent and marijuana inquiries came *after* the objective evidence revealed that Williams was the car's registered owner. Although Williams's license plate yielded no result in the DMV database, this database generally indicates if a license plate had been stolen or belonged to a different car. And by the time of the inquiries, the officers had reviewed Williams's registration card, which matched the car's license plate and listed Williams as the registered owner of the car. The registration card also indicated a serial number for the registration sticker that corresponded with the sticker on the car's license plate. Further, the registration card confirmed that it was issued on April 11, 2019; was registered through August 18, 2019; the Vehicle Identification Number ("VIN") was WDBJH65F6XA729314; and that the DMV had received a fee of $252.00 to register the car.

This information was consistent with the tow record that Officer Roche found during his records check before the consent and marijuana inquiries. This tow record showed that the car, with the same license plate number and VIN, had been towed only a few weeks earlier. Officer Roche testified that he was familiar with the San Francisco Police Department's policy that a towed car could not have been released without valid registration. Specifically, this policy states that "pursuant to California Vehicle Code § 23553[,] . . . a release of a car may not be issued for any vehicle with an expired registration. After the necessary registration

3

fees have been paid and a DMV receipt is presented, [the] officer shall issue a vehicle release." And prior to the officers' consent and marijuana inquiries, Sergeant Conway had called Officer Roche to confirm that the car's VIN "comes back to a release liability to a Willie Williams."

Even if, despite this evidence, the officers' suspicion of a stolen car was not dispelled by the time of their consent and marijuana inquiries, questions about consent to search a car and marijuana possession are not sufficiently tailored to determining whether a car has been stolen. *See Rodriguez*, 575 U.S. at 354. Rather, such questions are plainly aimed at "detect[ing] crime in general or drug trafficking in particular," which *Rodriguez* prohibits in the absence of independent reasonable suspicion. *Id.* at 357. Nor does the government offer any explanation to the contrary. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our circuit has repeatedly admonished that we cannot manufacture arguments for [a party]," and "[a] bare assertion of an issue does not preserve a claim." (internal quotation marks and citations omitted)).

The record only further confirms that the officers' consent and marijuana inquiries were not in connection to any investigation into whether the car was stolen, but were instead an investigation into whether Williams was trafficking drugs. At the evidentiary hearing, Officer Roche was asked "consent has nothing to do with a bad registration, does it?" and "[t]he request for consent had nothing

4

to do with your records search, did it?" Officer Roche responded, "No." Officer Roche was then asked, "And [the] marijuana investigation had nothing to do with your records check?" Officer Roche again replied, "No." In addition, Officer Roche testified that he called Sergeant Conway "to ask him about marijuana and to see if it was a proper way to conduct—or in order to do a search." Officer Roche confirmed that he did so "[b]ecause [he] wanted to s[earch] that drug dealer's car[.]" Finally, Officer Roche answered affirmatively when asked whether he "would have liked to get inside that car because [he] suspected it was involved with drug dealing[.]"

Second, the officers' unrelated consent and marijuana inquiries added time to the stop. As soon as Sergeant Conway confirmed to Officer Roche that the car's VIN "comes back to a release liability to a Willie Williams," Officer Roche immediately turned to pursuing the questions about consent and marijuana, abandoning any attempt to continue investigating the car's registration status. Officer Roche whispered to Officer Mullins, who was conversing with Williams, "consent, or any marijuana." After Williams declined Officer Mullins's request for consent to search the car, Officer Mullins appeared to end the stop, telling Williams, "Then we are just going to give you a . . . ."

But Officer Roche interrupted Officer Mullins to initiate a marijuana investigation, asking Williams, "Hey, you don't have any marijuana in the car or

5

anything, do you?  No?  No pot or nothing?"  After Williams produced a small, closed container of marijuana, Officer Roche asked him to "stand by."  Officer Roche then walked away, telling Officer Mullins that he was "going to go tactical real quick."  Officer Roche proceeded to call Sergeant Conway about whether the marijuana would permit a search of the car.  All told, these inquiries added nearly three minutes to the stop.[2]

The government and the dissent contend that no time was added because the inquiries occurred while Officer Roche was waiting for additional information from Sergeant Conway, who was allegedly continuing to investigate the car's registration status.  This argument fails for two, independently sufficient reasons.

For one, the government and the dissent are wrong as a factual matter.  The officers' body camera videos show that Sergeant Conway called Officer Roche only once.  During that call, Sergeant Conway reported the findings of his investigation into the car's registration status, which he had undertaken after overhearing on the radio that the dispatcher found no record in the DMV database.  The conversation was limited to Sergeant Conway asking whether Williams's car

_____

[2] These facts readily distinguish this case from *United States v. Taylor*, 60 F.4th 1233 (9th Cir. 2023), on which the dissent mistakenly relies.  There, the officer asked the defendant whether he had any weapons, which we concluded was a question that was "properly within the mission of the stop."  *Id.* at 1239.  Although the officer "fleetingly mention[ed] drugs in the same breath that he asked about weapons," the defendant "gave a single answer to the combined question."  *Id.*

was "a [19]99 Mercedes," and Sergeant Conway conveying that he had confirmed that the car's VIN "comes back to a release liability to a Willie Williams." Not once did Sergeant Conway indicate that he would continue to investigate or convey any additional information to Officer Roche.

But even assuming that was the case, the government and the dissent would still be wrong, because Officer Roche's call to Sergeant Conway about marijuana diverted Sergeant Conway away from any investigation into the car's registration. "The reasonableness of a seizure . . . depends on what the police in fact do," *Rodriguez*, 575 U.S. at 357, and so "[i]f an officer can complete traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete [the stop's] mission,'" *id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). As such, "the critical question . . . is not whether" the unrelated inquiry "occurs before or after" the completion of the stop's mission, "but whether conducting" that inquiry "prolongs—*i.e.*, adds time to—the stop." *Id.* (cleaned up). Therefore, whether the stop's mission was ongoing, although apparently critical to the dissent, is immaterial under *Rodriguez* because "[w]hat mattered was the added time, not at what point, in the chronology of the stop, that time was added." *Landeros*, 913 F.3d at 866; *see also United States v. Frazier*, 30 F.4th 1165, 1180 (10th Cir. 2022) ("Under *Rodriguez*, it makes no difference whether an investigative detour occurs before or after the completion of the stop's traffic-

7

based mission. The question is whether the stop would have ended sooner had the officer continued to work diligently on the traffic-related tasks rather than pursue an unrelated investigation.").

Accordingly, any time that Sergeant Conway spent addressing Officer Roche's unrelated marijuana investigation was time the mission's tasks went unaddressed, which necessarily prolonged the stop. *See Rodriguez*, 575 U.S. at 357. Contrary to the dissent's suggestion, *Rodriguez* made clear that even de minimis delays caused by unrelated "[o]n-scene investigation into other crimes" cannot be tolerated by the Fourth Amendment absent reasonable suspicion. *Id.* at 356–57; *see also Nault*, 41 F.4th at 1078 n.2 (recognizing that "courts have found stops unconstitutional when prolonged by under thirty seconds before officers developed independent suspicion"); *Landeros*, 913 F.3d at 867.

The dissent's argument to the contrary was explicitly rejected by *Rodriguez*, which held that an officer may not "incrementally prolong a stop" for an unrelated inquiry even if he is "reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable." 575 U.S. at 357 (cleaned up). An officer thus cannot "earn bonus time to pursue an unrelated criminal investigation" by "completing all traffic-related tasks expeditiously." *Id.*

Our court so recognized in *Landeros*. There, we acknowledged that our prior precedent, "which permit[ted] slight prolongations to ask unrelated

8

questions," cannot survive after *Rodriguez*, "which requires independent, reasonable suspicion if [the additional investigation] adds any time to a traffic stop." 913 F.3d at 867 (citation omitted). We therefore concluded that *Rodriguez* abrogated a Ninth Circuit decision holding that an officer did not unlawfully prolong a stop when he "took a break from writing a traffic citation to ask the driver about a methamphetamine laboratory and obtain the driver's consent to search his truck." *Id.* Even if "the circumstances surrounding the brief pause . . . were reasonable," the prolongation was unlawful in the absence of reasonable suspicion. *Id.* "*Rodriguez* squarely rejected such a reasonableness standard for determining whether prolonging a traffic stop for reasons not justified by the initial purpose of the stop is lawful." *Id.*

Third and finally, "*Rodriguez* requires that a traffic stop may be extended to conduct an investigation into matters other than the original traffic violation only if the officers have reasonable suspicion of an independent offense." *Id.* The government argues that the officers had reasonable suspicion that Williams possessed firearms or controlled substances. Specifically, the government cites Officer Roche's past observations of Williams loitering near the 200 block of Golden Gate Avenue, a high-crime area, and associating with known criminals, coupled with the fact that Williams was stopped two to three blocks from the 200 block of Golden Gate Avenue, driving in a trajectory consistent with having left

9

that block.[3]  But the district court, having concluded that no prolongation occurred, did not reach whether the officers had reasonable suspicion to justify their prolongation of the stop.  We therefore decline to consider such a fact-intensive issue in the first instance, *see United States v. Prieto-Villa*, 910 F.2d 601, 607 (9th Cir. 1990), and remand for the district court to determine whether the officers' prolongation was otherwise supported by independent reasonable suspicion.

**VACATED and REMANDED.**

---

[3] Our precedent casts doubt on the government's unparticularized theory of suspicion.  *See United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc) ("[T]he officer in question 'must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity.'" (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123–24 (2000))).

*United States v. Williams*, No. 22-10052
BUMATAY, Circuit Judge, dissenting:

The "ultimate touchstone" of the Fourth Amendment is "reasonableness." *Lange v. California*, 141 S. Ct. 2011, 2017 (2021) (simplified). The question here is whether San Francisco Police Department officers unreasonably prolonged Willie Williams's traffic stop—and thus violated his Fourth Amendment rights—by asking him for consent to search his car and if he possessed marijuana. I agree with the district court in concluding that they did not. I thus would affirm on that basis and respectfully dissent.

## I.

Officers Cullen Roche and Kerry Mullins pulled Williams over for broken brake lights. When they ran a search on his license plate through the DMV database, the database returned no result. This was not normal. Indeed, Officer Roche, in his four and a half years as a police officer, had never encountered a no-return on a license plate search until he ran one on Williams's plate.

Police dispatch also thought this was unusual. Dispatch told Officer Roche over the radio that the plate had a tow history that matched Williams's vehicle. But when Officer Roche asked to confirm that there was no registration information associated with the plate, dispatch replied, "I don't know why DMV is coming back like that. Let me take a look again."

1

Overhearing that dispatch was "stumped" trying to figure out the license plate issue, Sergeant John Conway began his own investigation. Sergeant Conway radioed Officer Roche to tell him that the tow database showed a "release of liability to a Willie Williams." Sergeant Conway then took the VIN number from the tow database—which is separate from the DMV database—and plugged it into the DMV database. That search showed a license plate that was different from the one on Williams's car and that the registration was six months expired. So the investigation was far from over.

While Sergeant Conway was still investigating these discrepancies, Officers Roche and Mullins asked Williams if they could search the car and if Williams had any marijuana. Williams did not consent to the search but showed the officers a small container of marijuana. Officer Roche then called Sergeant Conway to ask him about the marijuana Williams had in his car. Sergeant Conway quickly answered Officer Roche's questions and then asked his own questions about the license plate issue. Officer Roche asked Sergeant Conway if he would come to the stop to help them, and Sergeant Conway did. When Sergeant Conway arrived on scene, he confirmed that he was "do[ing] a little investigation of [his] own" while Officers Roche and Mullins were asking Williams other questions. Officer Roche replied that Conway's investigation was "a huge help" to him and Officer Mullins.

From there, Sergeant Conway and Officers Roche and Mullins continued their investigation of Williams's license plate and registration. They asked Williams about why his license plate did not show a return, and why a search on his VIN showed a different license plate and expired registration. Ultimately, Sergeant Conway and Officer Roche concluded that Williams's registration card was probably forged and that the car's registration had expired six months earlier. The officers conducted an inventory search of the car. That inventory search turned up a digital scale and a pill bottle with broken pills. And the officers arrested Williams.

## II.

The Fourth Amendment prohibits officers from unreasonably prolonging a traffic stop. "[A] traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete the mission" of the stop. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (simplified). Like all Fourth Amendment inquiries, this is a question of "reasonableness." Officers may not extend a stop beyond its "mission" unless the extension itself is supported by independent reasonable suspicion. *Id*. But not every fleeting action beyond these limits violates the Fourth Amendment. To violate the Fourth Amendment, an officer's actions must "measurably extend the duration of the stop." *Id*. (simplified). In *Rodriguez*, the Supreme Court held that a seven- or eight-minute delay was a measurable extension. *Id*. at 352; *see also United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019)

3

("several minutes of additional questioning" was an unlawful prolongation). On the other end of the spectrum, an officer's "fleeting[] mention [of] drugs"—even if unrelated to the mission of the stop—doesn't prolong the stop. *United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023). And when we conduct this inquiry, the "officers' subjective motivations are irrelevant." *Id*. at 1240.

Williams argues that the questions about consent to search his car and whether he had marijuana prolonged the traffic stop. That's wrong because the investigation of his vehicle registration discrepancy was still ongoing at the time and so these questions didn't measurably extend the stop. While Officers Roche and Mullins posed these questions to Williams, Sergeant Conway was still diligently investigating the vehicle registration issue. Officer Roche testified that he knew that "Sergeant Conway was looking into [the vehicle registration] issue" at the time. Indeed, the record shows that Sergeant Conway continued to investigate the issue by cross-referencing the information in the tow and DMV databases while Officers Roche and Mullins were on scene with Williams. The record also shows that Sergeant Conway didn't arrive on scene until nearly five and half minutes after the marijuana and consent questions were asked and then continued to lead the vehicle ownership investigation.

The majority takes pains to explain why Williams's registration plausibly made sense despite the unusual circumstances. But the majority does so with the

4

benefit of hindsight clarity—a luxury the officers never had. In any event, the majority's Monday-morning quarterbacking doesn't negate the need or legitimacy of the registration investigation.

The majority also tries to get around the fact that Sergeant Conway continued his investigation while the officers questioned Williams by focusing on Officer Roche's intentions throughout the stop. But our inquiry "is that of 'objective' reasonableness." *Taylor*, 60 F.4th at 1243 (quoting *Florida v. Jimeno*, 500 U.S. 248, 251 (1991)). That means "the officers' subjective motivations, whatever they may have been, could not change the objective reasonableness of their actions." *Id.*; *see also Whren v. United States*, 517 U.S. 806, 814 (1996) ("[T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent."). So the stop would still be lawful "even if the officer made the stop only because he wished to investigate a more serious offense." *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016). Officer Roche's personal motivations are thus "irrelevant." *Taylor*, 60 F.4th at 1239.

At one point, Officer Roche did ask Sergeant Conway about whether Williams's possession of marijuana was enough to search the car. This exchange lasted about a minute. Williams argues that this discussion unlawfully prolonged the stop. But he doesn't show that the stop would have been measurably shorter if

5

this discussion hadn't happened. And it takes pure speculation to argue otherwise. And even if this discussion were unrelated to the mission of investigating the vehicle registration, such an exchange more resembles the "fleeting[] mention [of] drugs" not measurably prolonging a stop in *Taylor*, 60 F.4th at 1239, than the seven- or eight- minute delay criticized in *Rodriguez*, 575 U.S. at 352, or the "several minute[]" prolongation encountered in *Landeros*, 913 F.3d at 867. Contrary to the majority's view, neither the Supreme Court nor the Ninth Circuit has adopted a view that *any* de minimis delays violate the Fourth Amendment. The majority, besides citing those cases, fails to point to any language holding otherwise. And I'm aware of no case that has held that discussions between officers about different investigative approaches can unreasonably prolong a stop. Indeed, courts should want officers to discuss proper protocols with their supervisors to avoid infringing citizens' rights.

Turning back to "what the police in fact [did]," *Rodriguez*, 575 U.S. at 357, the record supports the district court's conclusion that the officers didn't prolong the stop. At the very least, the record shows that the district court's view was not clearly erroneous. *See United States v. Magdirila*, 962 F.3d 1152, 1156 (9th Cir. 2020). The district court also noted that it would provide a "longer explanation" of its ruling in the event of an appeal. Rather than reverse the prolongation ruling, we should have granted the district court that simple courtesy.

6

As an alternative, the government provided strong arguments on why independent reasonable suspicion supported the marijuana and consent questions. Because the majority remands on this question, I avoid using it as an alternative basis for affirmance here.