**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 48008**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Boise, May 2021 Term |
| | ) | |
| v. | ) | Opinion filed: September 23, 2021 |
| | ) | |
| JENNIFER ANNE WARREN, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Defendant-Respondent. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Peter G. Barton, District Judge.

The judgment of the district court is <u>reversed</u>.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Ken Jorgensen argued.

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Respondent. Jason Pintler argued.

---

MOELLER, Justice.

The State appeals from the district court's order granting Jennifer Anne Warren's ("Jennifer") motion to suppress evidence. The district court concluded that the officers had no lawful basis to continue detaining Jennifer, a passenger in a vehicle, after officers abandoned the original purpose of the traffic stop in order to investigate whether the driver was in violation of a criminal no contact order barring him from being with Jennifer. On appeal, the State argued that reasonable suspicion a driver is engaged in criminal conduct not only allows officers to extend a traffic stop and detain the driver, but it also includes the continued lawful detention of all passengers. For the reasons stated below, we reverse the decision of the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Boise Police Department Officer Matthew Lane ("Officer Lane") stopped a GMC Yukon for a canceled and expired registration. The vehicle was driven by Steven Warren ("Steven"),

and Jennifer was in the passenger seat. Steven told officers that Jennifer was his wife. Officer Lane ran the identification information supplied by both parties, and the data system flashed red, signaling an alert that there was a civil protection order and a criminal no-contact order in place preventing Steven from having contact with Jennifer. Additionally, there were three civil protection orders against Jennifer, with various third parties listed as the protected persons.[1] At this point, the officer abandoned the original purpose of the traffic stop in order to investigate whether Steven was in violation of either order by being with Jennifer in the car.

To separate Jennifer from Steven, a second officer, Andrew Morlock ("Officer Morlock"), asked Jennifer to step out of the vehicle. Dispatch had yet to confirm whether any of the orders were active, or whether they may have contained an exception that allowed Steven and Jennifer to be together for limited purposes. While the officers waited for that information, Officer Morlock asked Jennifer about some bulges in her pockets, and she pulled out a lighter, some money, and two syringes wrapped in tissue.

Officer Lane ran his drug-detection dog around the vehicle, and the dog alerted. A search of the car turned up a suspected marijuana joint and a tin holding small containers of a waxy substance, one of which later tested presumptively positive for marijuana. Jennifer's purse was also in the vehicle and contained pills later identified as hydrocodone. During the car search, dispatch confirmed that the criminal no-contact order against Steven was active. Steven was taken into custody.

Jennifer was arrested for possession of drug paraphernalia, and a subsequent search of her person revealed another syringe and a baggie of methamphetamine hidden in her bra. The State charged Jennifer with possession of methamphetamine, possession of hydrocodone, possession of marijuana, and possession of drug paraphernalia, as well as a persistent violator enhancement.

B. **Procedural Background**

Jennifer moved to suppress the evidence from the search of the vehicle and her person, arguing it was discovered only after an unlawful extension of the traffic stop.[2] Following a hearing, the district court allowed the parties to present additional briefing on the question of whether the stop as related to Jennifer was unlawfully extended. Subsequently, the district court

---

[1] The State does not contend that Jennifer was suspected of criminal activity associated with any of these orders.
[2] Additionally, Jennifer asserted that (1) the drug dog's alert did not provide probable cause to search the vehicle; (2) the officers unlawfully searched Jennifer's person; (3) officers violated Jennifer's Miranda rights; and (4) Jennifer was arrested for a misdemeanor that did not occur in the arresting officer's presence. The district court did not rule on these issues and we have not been asked to consider them on appeal.

entered an order granting Jennifer's motion to suppress the evidence on the grounds that the officer lacked reasonable suspicion to detain Jennifer as related to the protection orders.[3] The district court concluded the investigation of Jennifer subsequent to the officers abandoning the traffic stop was unlawful because she was detained after the original purpose of the stop was abandoned, and the officers had no reasonable suspicion she was committing a crime related to the protection orders. Further, the district court determined that Jennifer had not handed over the contents of her pockets voluntarily but as part of the unlawful detention. The State timely appealed the issue of whether Jennifer was lawfully detained as a passenger in the vehicle.

## II. STANDARD OF REVIEW

"The proper standard of review applied to the ruling of a trial court suppressing evidence on constitutional grounds is one of deference to factual findings unless they are clearly erroneous. However, we exercise free review over whether, based upon the trial court's findings, the evidence should have been suppressed." *State v. Lira-Lara*, 132 Idaho 465, 466, 974 P.2d 1094, 1095 (1999) (internal citations omitted).

In the present case, inasmuch as the State accepts the district court's factual findings and only challenges the constitutionality of Jennifer's detention, this is purely a matter of law.

## III. ANALYSIS

A. **The district court erred when it determined that an officer cannot continue to detain a vehicle's passenger upon reasonable suspicion that a stopped driver may have committed another crime.**

The parties agree that Jennifer was lawfully detained as a passenger in a stopped vehicle while police initially investigated Steven's expired registration. The question presented here is whether it was lawful for police to continue detaining Jennifer when the focus of the investigation evolved to a more pressing and potentially dangerous crime in progress: whether Steven was violating protection orders making it unlawful for him to have contact with Jennifer. According to the State, reasonable suspicion that Steven was violating the civil protection order and the criminal no-contact order allowed officers to extend the traffic stop and to continue to

---

[3] At the hearing on Jennifer's motion to suppress, the State noted that Jennifer's briefing on the issue related to the lawfulness of her detention in general. However, during oral argument, Jennifer argued specifically that she could not be detained as a passenger related to the protection orders. The district court allowed the State to submit supplemental briefing on that discrete question. The district court then focused its written ruling on this narrow issue, concluding: "Evidence obtained after the officers discovered that [Jennifer] was not violating an NCO (including the methamphetamine, balm containing THC, syringes, and [Jennifer's] statements to the officers) are suppressed."

detain Jennifer, as well. However, Jennifer counters that when the traffic stop's original purpose—investigating a possible expired and canceled registration—was abandoned by the officers, the *traffic stop* was complete. Thus, she asserts that the subsequent investigation into the protection orders was not a traffic investigation. Because the officers had no independent reasonable suspicion that Jennifer was engaged in the new criminal activity, she claims that her continued detention became unlawful when the stop shifted to focus on the protection orders. Thus, she maintains that any evidence obtained due to her illegal detention was correctly suppressed by the district court.

The Fourth Amendment of the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." When an officer stops a vehicle, it constitutes a seizure by law enforcement to which the Fourth Amendment applies. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). This type of seizure made to investigate a traffic violation is valid under the Fourth Amendment so long as the seizing officer has reasonable suspicion that a traffic violation actually occurred. *See Rodriguez v. United States*, 575 U.S. 348 (2015). It is well-established that the seizure also extends to every person in the vehicle for the duration of the traffic stop. *Brendlin v. California,* 551 U.S. 249, 255 (2007).

The United States Supreme Court explained the constitutional basis for permitting passengers in an automobile to be seized during a traffic stop in *Arizona v. Johnson*, 555 U.S. 323 (2009). The Court noted that threats against officer safety are amplified during traffic stops, not due to the relatively benign nature of traffic infractions, "but from the fact that evidence of a more serious crime might be uncovered during the stop." *Id*. at 331 (internal citation omitted). Because passengers are already physically stopped when the vehicle is stopped, the Supreme Court observed that, if the passenger is legally detained as well, "the additional intrusion on the passenger is minimal." *Id.* at 332 (internal citation omitted).

Jennifer asks this Court to consider what a traffic stop is—when does it end, and by extension, when does law enforcement no longer have the right to detain a person simply because they are a passenger in a stopped vehicle? The Supreme Court's decision in *Johnson* is instructive:

> The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. *Normally, the stop ends when the police have no further need to control the scene, and inform the driver and passengers*

4

*they are free to leave.* An officer's inquiries into matters unrelated to the justification for the traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop.

*Johnson*, 555 U.S. at 333 (emphasis added; internal citations omitted). Thus, *Johnson* emphasized that the length of the stop, and law enforcement's ability to seize the vehicle's occupants, is measured by how long officers need to control the scene. At the same time, officers may not pursue investigations without reasonable suspicion if those investigations extend the stop unlawfully. If such an investigation unlawfully extends the duration of the traffic stop, then the Fourth Amendment rights of the vehicle's occupants have been violated.

We view the present facts as fitting squarely within the circumstances described in *Johnson*, which justify the detention of a vehicle's passengers. The *Johnson* Court articulated that officers need to control all parties in a traffic stop because of the potential for exposing other criminal activity, which might lead to danger. That precise scenario occurred here. A simple traffic stop led to the initial discovery that Steven was potentially in violation of a civil protection order and criminal no-contact order involving Jennifer—the passenger in the car. They also learned that Jennifer had multiple protection orders entered against her with several third parties listed as the protected persons. It was reasonable for law enforcement to initially infer that the orders issued against Steven might have stemmed from past violence or threats of violence between Steven and Jennifer, and that the orders could have been mutual. Regardless of whether the officers were investigating the expired vehicle registration or if they shifted focus to the more urgent protection orders, the physical risk to the officers remained the same or actually increased as reasonable suspicion of a more serious crime arose during the lawful traffic stop. This justified officers in continuing to control the scene—including detaining Jennifer—as they investigated further.

The State concedes that the officers abandoned any investigation of the vehicle's registration as soon as they discovered the civil protection order and criminal no-contact order in place against Steven. Due to this pivot in the purpose of the stop, the district court determined that the civil protection order investigation could not be considered an extension of the traffic stop because the traffic-related investigation had concluded. Thus, it ruled that there could be no Fourth Amendment exception that allowed for Jennifer's detention. In other words, the district court read "traffic stop" rigidly as a stop that only applies to motor vehicle code violations. By

5

extension, this means that *any* other investigation based on reasonable suspicion that evolves from the original traffic stop would not qualify as a traffic stop, notwithstanding the fact that it occurred in and around the vehicle while it was stopped on a roadside.

On appeal, Jennifer attempts to find support for this position by citing from two factually dissimilar dog-sniff cases—one from the United States Supreme Court, *Rodriguez v. United States*, and the other from this Court, *State v. Linze*, 161 Idaho 605, 389 P.3d 150 (2016). In *Rodriguez*, an officer issued a warning ticket for a traffic infraction and then, without reasonable suspicion of another crime, ran a narcotics dog around the vehicle for the purpose of detecting illicit substances. *Rodriguez*, 575 U.S. at 352. The Supreme Court held the extension of the stop for further investigation and a dog sniff was not reasonable under the Fourth Amendment, stating,

> a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation.

*Rodriguez*, 575 U.S. at 350–51 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). In explaining how the dog sniff exceeded the mission of the traffic stop, the *Rodriguez* Court cited *Johnson* for the proposition that an officer cannot conduct an investigation that prolongs a traffic stop, "absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355. The officer in *Rodriguez* did not have reasonable suspicion for the dog sniff, and the dog sniff took an additional seven or eight minutes; thus, the stop was unlawfully extended. *Id.* at 357. The Supreme Court observed that the justification for intruding upon Fourth Amendment rights was specific to the traffic stop and did not, in this situation, extend to the dog sniff:

> Traffic stops are "especially fraught with danger to police officers," so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely. On-scene investigation into other crimes, however, detours from that mission. So too do safety precautions taken in order to facilitate such detours. . . . Highway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular.

*Id.* at 356–57 (internal citations omitted).

We cited *Rodriguez* for our conclusion in *Linze* that a traffic stop had been unlawfully extended in order to conduct a dog sniff. In that case, an officer stopped a vehicle for a cracked

windshield but also called for a K-9 unit to respond. *Linze*, 161 Idaho at 606, 389 P.3d at 151. When the K-9 unit arrived, the first officer stopped writing the traffic citation in order to serve as back up while the second officer led the dog around the vehicle. *Id.* at 607, 389 P.3d 152. About two and a half minutes later, the dog alerted, and both officers searched the vehicle, discovering a glass pipe with white crystal residue, which Linze admitted he used to smoke methamphetamine. *Id.* Guided by the Supreme Court's holding in *Rodriguez*, we determined Linze's Fourth Amendment rights had been violated because the officer who initiated the traffic stop abandoned the traffic stop in order to pursue an investigation not based on reasonable suspicion. *Id.* at 609, 389 P.3d 154. We observed:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, *unless some new reasonable suspicion or probable cause arises* to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

*Id.* (emphasis added). Thus, any extension of the traffic stop made to pursue an investigation not grounded in reasonable suspicion would violate the Fourth Amendment. *Id.*

Jennifer would have us read *Rodriguez* and *Linze* as meaning that *only* stops related to motor vehicle code investigations allow for the detention of a vehicle's passengers. However, we do not agree that such a sweeping inference can be drawn from the facts of either case. In *Rodriguez*, police completed the traffic citation and then extended the stop to permit a drug dog sniff around the vehicle—*without any reasonable suspicion* of drug activity. Thus, when the Supreme Court described how the traffic stop had been different from the "[o]n-scene investigation into other crimes," 575 U.S. at 356, we read this as referring only to what occurred—first, a traffic stop, and then an additional investigation made without reasonable suspicion, which extended the duration of the stop. Nothing in *Rodriguez* states that a traffic stop which gives rise to reasonable suspicion of another crime then transforms the subsequent investigation into a *non-traffic* stop with a slate of different rules.

7

Similarly, in *Linze* the officer abandoned the traffic stop to pursue a drug dog sniff investigation—again, *absent any reasonable suspicion*. We relied on *Rodriguez* for our conclusion that the stop had been extended unlawfully, and we made no comment about circumstances like the present where a traffic stop gives rise to reasonable suspicion of another crime. In sum, the district court reads *Linze* as meaning that only stops related to motor vehicle code violations allow for the detention of passengers. However, it failed to recognize that *Linze* never addressed what would happen if the traffic stop led to reasonable suspicion that the driver was engaged in another crime—the key factual dissimilarity between *Linze* and the case at hand.

In *Johnson*, the Supreme Court observed that a passenger may be every bit as motivated as the driver to use violence in order to prevent the detection of another crime. *Johnson*, 555 U.S. 332–33. Moreover, a passenger is just as likely as the driver to be armed and dangerous. *Id.* at 333. Thus, the Supreme Court has stated that it is "too plain for argument" that the interest in officer safety during a roadside stop is "both legitimate and weighty." *Maryland v. Wilson*, 519 U.S. 408, 412 (1997) (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)). Further, even the safety risk associated with standing beside a vehicle, near the path of oncoming traffic, is considerable. *Id.* Simply put, these justifications for allowing the officer to maintain control of the scene by detaining passengers do not disappear merely because an officer conducting a traffic stop develops reasonable suspicion of another crime. The officer safety rationale for allowing the detention of passengers throughout the search is not unlike the rationale for detaining occupants in a home during a lawful parole search, which we held was constitutional in *State v. Phipps*, 166 Idaho 1, 8, 454 P.3d 1084, 1091 (2019), *cert. denied*, 141 S. Ct. 242 (2020).

Therefore, we do not read *Rodriguez* or *Linze* as creating a distinction in the ability of law enforcement to control the scene based on whether it is an initial traffic stop or a subsequent criminal investigation for which the officers have reasonable suspicion. We find it especially troubling that doing so would mean affording greater protection to an officer who stops a vehicle and writes a traffic citation, than for an officer who stops a vehicle and later discovers evidence of a more serious crime. There is simply nothing in the reasoning of *Rodriguez* or *Linze* that would require us to compromise officer safety in this manner.

We acknowledge the importance of the Fourth Amendment in preventing police from unlawfully detaining individuals—especially passengers unassociated with the original traffic violation—without reasonable suspicion of criminal activity. However, Jennifer's view asks us

to create a standard for detaining passengers that is not only at odds with the dangerous reality of police investigations that arise daily during traffic stops, but inconsistent with United States Supreme Court precedent. *Johnson*, 555 U.S. at 332-33. Therefore, we hold that the district court erred in granting the motion to suppress.

## IV. CONCLUSION

For the foregoing reasons, this Court reverses the district court's order granting Jennifer's motion to suppress evidence.


Chief Justice BEVAN, and Justices BRODY and BURDICK **CONCUR.**


STEGNER, J., concurring.

I concur in the majority's conclusion that Jennifer was lawfully detained during the investigation of Steven. However, I find it necessary to add a written concurrence because an important constitutional issue has not been addressed in the way this case was argued and resolved. Left unanswered by this case is the question of whether a vehicle's passenger may be subjected to a criminal investigation when no reasonable suspicion exists to suspect her of criminal activity. I believe that, in order to lawfully search a passenger during an extended traffic stop, law enforcement must have reasonable suspicion of criminal activity *specific to that passenger* to subject her to a search. However, because Jennifer did not preserve this issue by raising this argument in her brief on appeal (as she did in the district court), I nevertheless am constrained to agree with the majority's decision.

Here, officers lawfully stopped Steven, as the driver, to investigate a canceled registration. When this purpose was abandoned to investigate Steven's potential violation of a civil protection order and a criminal no contact order prohibiting him from having contact with Jennifer, officers possessed no reasonable suspicion specific to Jennifer which allowed them to eventually search both her person and her belongings.[1] Although it is clear that Jennifer was detained lawfully as the passenger of a vehicle stopped for a traffic violation, had Jennifer raised this argument on appeal, I would conclude that the officers' subsequent search of Jennifer's person and belongings during their investigation of Steven was unreasonable because it was not

---

[1] The State did not contend that Jennifer was suspected of any criminal activity associated with protection orders between her and unrelated third parties.

9

based on particularized suspicion and therefore violated her Fourth Amendment rights. *See Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop.").

The majority places great weight on the United States Supreme Court's decision in *Arizona v. Johnson*, finding that the present case's facts "fit[] squarely within the circumstances described in *Johnson*, which justify the detention of a vehicle's passengers." I respectfully disagree with the majority's reliance on *Johnson*; *Johnson* is not only unnecessary *dicta*, but it is also factually distinguishable from this case. In *Johnson*, the passenger who was ultimately arrested during the traffic stop had a police scanner on his person, and he was also wearing clothing affiliated with a local gang which was being investigated by the officers performing the stop. Given these facts, the officers had reasonable suspicion that the passenger was armed and dangerous. *See id.* at 328. Here, officers had no reasonable basis to suspect that Jennifer was either armed and dangerous or that she was suspected of any other criminal activity. Rather, Steven was the focus of the officers' legitimate investigation because of his potential violation of both civil and criminal no contact orders prohibiting him from having contact with Jennifer. Therefore, *Johnson* is readily distinguishable from the facts presented in this case.

The majority also emphasizes the importance of officer safety during traffic stops, describing it as "legitimate and weighty." (Citing *Maryland v. Wilson*, 519 U.S. 408, 412 (1997).) While I agree that officer safety is an important factor during routine traffic stops that evolve into more serious criminal investigations, officer safety cannot trump the Fourth Amendment rights of passengers not independently suspected of criminal activity.

*Johnson* teaches that during a traffic stop,

> [t]he police need not have [] cause to believe any occupant of the vehicle is involved in criminal activity. To justify a patdown of the driver *or a passenger* during a traffic stop, however, just as in the case of a pedestrian reasonably suspected of criminal activity, *the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous*.

*Johnson*, 555 U.S. at 327 (italics added). *Johnson* therefore stands for the proposition that an officer needs independent reasonable suspicion particularized to the passenger in order to frisk that passenger. *Id.* The majority reasons that no matter the officers' reason for extending the lawful traffic stop, "the physical risk to the officers remained the same or actually increased as reasonable suspicion of a more serious crime arose." It was this physical risk, the majority contends, that "justified officers in continuing to control the scene—*including detaining*

10

*Jennifer*—as they investigated further." (Italics added.) To be clear, I agree with the majority that the officers were justified in detaining Jennifer for the duration of the stop and investigation of Steven because officer safety remained a legitimate interest until the stop had been completed. However, it is the officers' eventual investigation of Jennifer that was unreasonable. There is no evidence of any wrongdoing by Jennifer, she was simply a passenger caught in the net of the traffic stop and subsequent investigation of the driver.

The key distinction between the passenger in *Johnson* and Jennifer is that the officers in *Johnson* had individualized reasonable suspicion that the passenger was potentially armed and dangerous (as shown by his possessing a police scanner and his wearing gang-affiliated clothing), while in Jennifer's case the officers performing the stop of Steven's vehicle did not have independent reasonable suspicion that Jennifer herself had committed any crime or was armed and dangerous.

The Ninth Circuit Court of Appeals has indicated that particularized reasonable suspicion that a vehicle's passenger has committed a crime is necessary in order for officers to prolong a traffic stop past its original purpose. *United States v. Landeros*, 913 F.3d 862, 864 (9th Cir. 2019). In *Landeros*, a vehicle was stopped for speeding. *Id.* The vehicle's front seat passenger, Landeros, refused to give his identification to law enforcement. *Id.* at 865. Due to Landeros' refusal, the officer extended the stop past its initial purpose by calling for backup in order to obtain Landeros' compliance. *Id.*

The court in *Landeros* held that "the several minutes of additional questioning to ascertain Landeros' identity was permissible only if it was (1) part of the stop's 'mission' or (2) *supported by independent reasonable suspicion*." *Id.* at 867–68 (italics added). The court concluded that obtaining the identity of a passenger in this instance was not part of the stop's mission, and therefore, "[t]he officers' extension of the stop [] violated the Fourth Amendment unless supported by *independent* reasonable suspicion." *Id.* at 868 (italics added). In *Landeros*, officers had no reasonable suspicion that Landeros had engaged in any unlawful behavior. *Id.* ("[T]he record does not demonstrate that Officer Baker had a reasonable suspicion that Landeros was out past his curfew or drinking underage. Any extension of the traffic stop to investigate those matters was an unlawful seizure.").

As *Landeros* instructs, officers need independent reasonable suspicion that a passenger has engaged in criminal activity in order to justify a search of that individual. *See id.* Here,

11

officers did not possess reasonable suspicion that *Jennifer* had committed a crime. The majority attempts to reason that officers had reasonable suspicion specific to both Steven and Jennifer because of Jennifer's protection orders relating to third parties. The majority claims "it was reasonable for law enforcement to initially infer that the orders issued against Steven might have stemmed from past violence or threats of violence between Steven and Jennifer, and that the orders could have been mutual." This reasoning is unsupported by the underlying facts in that the State has never contended that Jennifer was suspected of any criminal activity regarding her unrelated protection orders, not to mention the fact that Jennifer did not have a mutual no contact order in place preventing her from having contact with Steven. Consequently, this conclusion is also *dicta* in that it is unnecessary for the majority's conclusion. The officers only had reasonable suspicion that Steven was presently in violation of a no contact order. In order for a traffic stop to include the search of a passenger in a vehicle, there must be *independent* reasonable suspicion to justify searching that passenger in order to pass constitutional muster. A traffic stop is not a license for the police to subject a passenger to interrogation and search that is unrelated to the basis for the original stop.

Accordingly, I concur in the majority's decision because Jennifer failed to argue on appeal that the subsequent search of her person and belongings violated her constitutional rights. However, the issue of whether law enforcement must have reasonable suspicion specific to a particular passenger must await resolution in a future case.