**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49802**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: January 5, 2024** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| TACUMA AKILI WALLACE, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Erik R. Lehtinen, Interim State Appellate Public Defender; Kiley A. Heffner, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Tacuma Akili Wallace appeals from his judgment of conviction for felony possession of a controlled substance, Idaho Code § 37-2732. Wallace argues the district court erred in denying his motion to suppress evidence because he contends the officer unlawfully prolonged the traffic stop. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 12, 2021, Corporal Scheierman observed Wallace's vehicle traveling on Interstate 86. Wallace's vehicle was passing another vehicle in the left lane; however, when Wallace saw the patrol vehicle, he began to slow down and did not pass. Wallace appeared to push himself back in his seat "in an attempt to shield himself" from Corporal Scheierman's view. After the patrol vehicle passed Wallace, Wallace sped back up and passed the other vehicle.

1

Corporal Scheierman left his location and caught up with Wallace's vehicle near Chubbuck. He followed as Wallace merged onto northbound Interstate 15. After Wallace failed to use his turn signal to merge into the left lane, Corporal Scheierman initiated a traffic stop.

Corporal Scheierman requested Wallace's driver's license. As Wallace attempted to retrieve his license from his wallet, his hands were visibly shaking enough that he was having a hard time getting his license out of his wallet. In addition, Wallace had labored breathing and was having a hard time communicating. Corporal Scheierman asked if Wallace had a medical condition. To see if he could decrease Wallace's nervousness, Corporal Scheierman told Wallace that a citation was not going to be issued. However, Wallace's nervousness did not decrease; he continued to exhibit extreme nervousness, labored breathing, and visibly shaking hands throughout the encounter.

Corporal Scheierman asked Wallace where he was going. Wallace paused and then answered that he was headed to Pocatello. Corporal Scheierman pointed out that Wallace had passed Pocatello. After another pause, Wallace said he was headed to "Bozeman, Bozeman, Bozeman." When Wallace provided his license, Corporal Scheierman also asked for the vehicle's rental agreement which was uploaded to Wallace's cell phone. As Wallace retrieved the agreement, Corporal Scheierman asked Wallace where he was coming from. Wallace said he was coming from Salt Lake City. This answer caught Corporal Scheierman's attention because the most direct route from Salt Lake City to Bozeman would have been on I-15, not I-86.

Corporal Scheierman asked Wallace to exit his vehicle. Wallace provided Corporal Scheierman with the rental agreement on his phone. Corporal Scheierman checked the vehicle through the Fusion Intelligence Center and discovered the vehicle had been in Denver, Colorado, on March 9, the day after it was rented in Salt Lake City.

After reviewing the rental agreement, Corporal Scheierman ran Wallace's information through his computer. During this time, Corporal Scheierman continued to talk with Wallace about his travel plans and Wallace said he had travelled from Salt Lake City to Burley, Idaho, to see a friend and was on his way to Bozeman for the weekend.

Corporal Scheierman reviewed Wallace's information return and noticed that Wallace was on parole and supervised release out of Utah. Corporal Scheierman asked Wallace if he was on parole and Wallace confirmed that he was. Corporal Scheierman asked if Wallace had permission to travel outside of Utah and Wallace said he did. Corporal Scheierman then asked Wallace for

2

his travel papers; Wallace said he did not have them on him, but they may be in an email. Corporal Scheierman asked what Wallace was on parole for and Wallace said it was "for some domestics" and "a drug violation in the state of Montana." Corporal Scheierman asked if there was anything illegal in the vehicle; Wallace said no. Corporal Scheierman told Wallace he had a K9 with him and asked if Wallace had marijuana, methamphetamine, or cocaine in the vehicle; Wallace admitted he had cocaine.

Thereafter, Corporal Scheierman searched the vehicle and located a backpack in the trunk that contained a large plastic bag filled with a white powdery substance he recognized to be cocaine. The State charged Wallace with trafficking in cocaine, along with a persistent violator enhancement. Wallace moved to suppress his statements and evidence obtained during the search of his vehicle. Wallace argued that Corporal Scheierman unlawfully extended the traffic stop by continuing to question Wallace after telling him he would not receive a citation, checking the vehicle's rental agreement, and receiving the driver's license return. The district court denied Wallace's motion to suppress and concluded that the facts known to Corporal Scheierman and the inferences that could reasonably be drawn from those facts were sufficient to give rise to reasonable suspicion of criminal activity which justified Wallace's detention.

Pursuant to a binding plea agreement, Wallace entered a conditional guilty plea to trafficking in cocaine, specifically reserving his right to appeal the district court's denial of his motion to suppress; the State dismissed the persistent violator enhancement. Wallace timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

3

### III.

### ANALYSIS

Wallace argues the district court erred in denying his suppression motion. Specifically, Wallace contends that Corporal Scheierman unlawfully extended the traffic stop by asking questions relative to his parole status, right to travel, and the presence of controlled substances in the vehicle. The State asserts that the questions regarding parole and the right to travel are within the purpose of the stop and, in any event, Corporal Scheierman had reasonable suspicion of a parole violation and other criminal activity.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. "The stop of a vehicle by law enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies." *State v. Linze*, 161 Idaho 605, 607-08, 389 P.3d 150, 152-53 (2016). The reasonableness of such a stop is analyzed as an investigative detention. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). An investigative detention does not require an officer to have probable cause to believe that a crime has been committed, but the detention must be based on something "more than a mere hunch or 'inchoate and unparticularized suspicion.'" *State v. Gonzales*, 165 Idaho 667, 673, 450 P.3d 315, 321 (2019) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The detention must be supported by specific, articulable facts, that the detained party has committed, is committing, or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968). Whether an officer's suspicion is reasonable is evaluated under the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417 (1981). Further, the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

Where a detention is justified by a traffic infraction, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are--or reasonably should have been--completed." *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021) (quoting *Rodriguez*, 575 U.S. at 354). "The purpose of a stop is not permanently fixed, however, at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop." *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003); *accord Hale*, 168 Idaho at 868, 489 P.3d at 45 ("[A] traffic stop may be permissibly extended if, during the course of effectuating the stop's mission, officers develop reasonable suspicion of some unrelated criminal offense."). The Idaho Supreme Court noted in *Linze* the

4

broad holding in *Rodriguez* that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Linze*, 161 Idaho at 608, 389 P.3d at 153. It concluded that "this rule is both broad and inflexible . . . [and] applies to all extensions of traffic stops including those that could reasonably be considered *de minimis*." *Id.* Interpreting *Rodriguez*, the Court ruled that:

> The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

*Linze*, 161 Idaho at 609, 389 P.3d at 154. However, the Court distinguished *Linze* on two bases. First, the *Warren* Court recognized that "*Linze* never addressed what would happen if the traffic stop led to reasonable suspicion that the driver was engaged in another crime." *State v. Warren*, 169 Idaho 588, 593, 499 P.3d 423, 428 (2021). Where there is reasonable suspicion of another crime, a detention may be prolonged to confirm or dispel that suspicion. *See Hale*, 168 Idaho at 868, 489 P.3d at 45.

As an initial matter, Corporal Scheierman's questions about Wallace's parole status did not extend the traffic stop because they were part of the stop's mission. A traffic stop's mission includes making ordinary inquiries incident to the stop. *State v. Riley*, 170 Idaho 572, 578, 514 P.3d 982, 988 (2022). An officer does not stray from the traffic stop's mission by merely following up on or verifying information provided from a license or registration check. *Hale*, 168 Idaho at 869, 489 P.3d at 456 (holding that officer did not extend the traffic stop by confirming the driver's permission to operate vehicle registered to another person). Because Corporal Scheierman learned that Wallace was on parole as part of his records check, Corporal Scheierman did not unlawfully prolong the stop by verifying that information with Wallace. An officer is entitled, as an incident to the stop, to follow up on the identity and parole status of the driver, including determining any limits on the defendant's ability to engage in otherwise constitutionally protected conduct, such as interstate travel.

5

Corporal Scheierman's questions about Wallace's parole status (or terms and conditions of parole) and questions about any illegal items in the vehicle were also supported by reasonable suspicion of additional criminal activity. "The officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer." *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990); *see also State v. Renteria*, 163 Idaho 545, 550, 415 P.3d 954, 959 (Ct. App. 2018). Even if there is not sufficient reasonable suspicion of any specific crime, there may still be reasonable suspicion that some criminal activity is afoot, which is all that is required to extend an investigative detention. *See United States v. Arvizu*, 534 U.S. 266, 272 (2002) (noting that the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion that criminal activity may be afoot); *Brown v. Texas*, 443 U.S. 47, 52 (1979) (noting that an officer must have reasonable suspicion, based on objective facts, that the individual is involved in criminal activity). "[A]n officer may draw reasonable inferences from the facts in his possession, and those inferences may be informed by the officer's experience and law enforcement training." *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

Reasonable suspicion of criminal activity arose *prior* to the questions about Wallace's parole status and the presence of illegal substances. Corporal Scheierman's observations during the traffic stop collectively established reasonable suspicion of drug activity. Although Wallace invites this Court to look at each fact in isolation, analyzing reasonableness under the Fourth Amendment is based on the totality of the circumstances. *See State v. Brumfield*, 136 Idaho 913, 917, 42 P.3d 706, 710 (Ct. App. 2001) (noting that facts susceptible to innocent explanations separately may still warrant further investigation when taken together).

Wallace does not dispute that Corporal Scheierman was justified in his initial stop based on his failure to signal; the only question is whether the district court correctly determined Corporal Scheierman's expansion of the scope of the stop to include investigation of other criminal activity was constitutionally permissible. We hold that the district court did not err because the facts known to Corporal Scheierman before the parole and drug questions were sufficient to support a reasonable suspicion that Wallace was involved in separate criminal activity. Specifically, Corporal Scheierman's suspicion was reasonably based on: (1) Wallace slowing below the speed limit after noticing Corporal Scheierman's patrol vehicle and his attempt to obscure himself as he passed; (2) Wallace's extreme nervousness during the stop, which did not abate upon being told

6

he would not be ticketed; (3) the rental vehicle's travel to Denver from Salt Lake before entering Idaho; and (4) Wallace's confusing recitation of his travel plans and his travel route, which were consistent with drug trafficking and inconsistent with his stated motivation for traveling.

Corporal Scheierman testified that, in his experience, "it is fairly common" for people involved in criminal activity to try to shield themselves from officers' view. Further, Wallace exhibited extreme nervousness, to the point that Corporal Scheierman asked if he needed medical assistance. While mere nervousness is of limited significance in establishing the presence of reasonable suspicion, *see State v. Neal*, 159 Idaho 919, 924, 367 P.3d 1231, 1236 (Ct. App. 2016), extreme nervousness is relevant in the reasonable suspicion analysis, *see United States v. Santos*, 403 F.3d 1120, 1127 (10th Cir. 2005) (noting that "extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion"). Wallace's nervousness can objectively be characterized as extreme and prolonged.

Corporal Scheierman also testified that, based on his training and experience, he recognized Wallace's travel plan--Salt Lake City to Denver and back to Idaho and then to Montana in a short period of time--as indicative of criminal activity, specifically drug trafficking. Corporal Scheierman testified that "Denver is a big source and destination area for illegal drugs." In addition, he testified that people involved in drug trafficking tend to make long, quick, turn-around trips. These circumstances led Corporal Scheierman to reasonably suspect that Wallace was engaged in drug trafficking. In addition, Wallace paused before answering Corporal Scheierman's questions, before correcting himself about going to Pocatello, which he had already passed, and then identifying Bozeman as his destination.

Wallace cites *State v. Kelley*, 160 Idaho 761, 379 P.3d 351 (Ct. App. 2016) for the proposition that mere nervousness or an unusual travel itinerary, including in a known drug corridor, are insufficient to establish reasonable suspicion. However, as set forth above, our analysis of the reasonableness of suspicion must be evaluated based upon the totality of the circumstances. Otherwise innocent acts, when considered together, can be sufficiently suspicious so as to justify an investigative detention. *Sokolow*, 490 U.S. at 9-10. Based on the totality of these circumstances, Corporal Scheierman had reasonable suspicion to detain Wallace for further investigation. The district court did not err in finding that the extension of Wallace's detention was supported by reasonable suspicion.

## IV.

## CONCLUSION

The district court did not err by denying Wallace's motion to suppress. Accordingly, we affirm Wallace's judgment of conviction.

Judge HUSKEY and Judge LORELLO **CONCUR**.