# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48631

<table>
<tr><td>

STATE OF IDAHO,

    Plaintiff-Appellant,

v.

CHRISTINA EVE WHARTON,

    Defendant-Respondent.

</td><td>

Boise, February 2022 Term

Opinion filed: May 23, 2022

Melanie Gagnepain, Clerk

</td></tr>
</table>

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Richard S. Christensen, District Judge.

The decision of the district court is <u>reversed</u> and <u>remanded</u> for further proceedings.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Appellant. Ken Jorgensen argued.

Eric D. Fredericksen, State Appellant Public Defender, Boise, for Respondent. Andrea Reynolds argued.

_____

BRODY, Justice.

This appeal arises out of a traffic stop where a single officer, without having reasonable suspicion that a crime involving the passenger was afoot, checked the passenger for outstanding warrants. The officer used her patrol vehicle's computer and received a "hit" for a warrant and arrested the passenger. After the arrest, the officer discovered methamphetamine in the passenger's purse, the rear of the patrol vehicle where the passenger was seated, and on the passenger's person. The district court ordered the methamphetamine evidence suppressed after concluding the officer unlawfully extended the traffic stop by checking the passenger for outstanding warrants absent reasonable suspicion or a safety justification particular to that stop. We reverse and remand as the Fourth Amendment permits law enforcement to check passengers for outstanding warrants as a

1

matter of course during traffic stops because of officer safety concerns.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

On the night of Tuesday, March 17, 2020, Officer Kelsey Torres of the Post Falls Police Department stopped a vehicle on an entrance ramp to I-90 for failing to signal and making an improper turn in violation of Idaho Code sections 49-808 and 49-644. While approaching the vehicle, Officer Torres noticed there were three occupants in the car: the driver, Christina Wharton (a front seat passenger), and a juvenile (a rear seat passenger). Officer Torres testified at the suppression hearing that there was minimal lighting surrounding the vehicle, but she did not observe any "furtive" movements by any occupants. Upon arriving at the driver's window, Officer Torres recognized Wharton as an individual she had previously arrested on an arrest warrant. Officer Torres testified that she knew Wharton's name from memory without needing Wharton's identification.

Officer Torres asked for, and collected, the license, registration, and proof of insurance from the driver. Officer Torres then turned to Wharton for her identification. The driver testified that Officer Torres, based on her tone, did not "ask" but "demand[ed]" Wharton produce identification. Nonetheless, Wharton handed her identification (presumptively her driver's license) to Officer Torres. Officer Torres then returned to her patrol vehicle. During the interaction, Officer Torres did not notice any weapons in the vehicle, nor did she see any other evidence of criminal activity.

Using her patrol vehicle's computer, Officer Torres ran a warrant check against the driver and Wharton. Officer Torres could not recall the order in which she ran the checks. Nevertheless, Officer Torres received a "hit" indicating there was an arrest warrant for Wharton out of Spokane County, Washington. Officer Torres estimated two minutes elapsed between the time she left the stopped vehicle and the time she received the "hit" on Wharton. Officer Torres then requested dispatch to confirm the warrant's validity. Officer Torres testified that based on past experiences, she needed to confirm the warrant was still valid and whether it was extraditable. It took dispatch approximately five minutes to confirm the warrant was valid and extraditable. Officer Torres then called for a backup officer, returned to the stopped vehicle, arrested Wharton, and placed her in the back of the patrol vehicle.

The juvenile in the stopped vehicle, Wharton's daughter, was not comfortable staying with the driver so Wharton requested that Officer Torres retrieve Wharton's cell phone from Wharton's

2

purse to contact a ride for her daughter. In retrieving Wharton's cell phone, Officer Torres found a bag with a white substance that, based upon her training and experience, Officer Torres suspected to be methamphetamine. When Officer Torres returned to her patrol vehicle, she saw what she believed to be methamphetamine "all over" the back seat of her patrol car and Wharton. Sometime later, Wharton admitted to having methamphetamine on her person inside the patrol vehicle.

The day after the stop, the State filed a criminal complaint charging Wharton with possession of a controlled substance. Wharton eventually pleaded "not-guilty" and filed a motion to suppress the methamphetamine evidence. Wharton argued that Officer Torres unlawfully extended the stop when she "detoured" to investigate Wharton, the passenger, without a justifiable safety concern under the circumstances of the stop. In response, the State argued that Officer Torres could permissibly check Wharton for outstanding warrants as a per se safety precaution during the traffic stop. In the alternative, the State argued that if it needed to show there was a particular safety justification, any burden was met based on the totality of the circumstances. The district court determined that the stop was unlawfully extended unless the State could show that Officer Torres had a safety justification, particular to the circumstances of the stop, to check Wharton for any outstanding warrants. The district court ultimately concluded the State did not carry its burden and ordered the methamphetamine evidence suppressed. The State timely appealed.

## II.      STANDARD OF REVIEW

"The Court reviews the denial of a motion to suppress using a bifurcated standard." *State v. Linze*, 161 Idaho 605, 607, 389 P.3d 150, 152 (2016). We accept the trial court's findings of fact unless they are "clearly erroneous." *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). "However, [we] freely review the trial court's application of constitutional principles in light of the facts found." *Id*.

## III.      ANALYSIS

This appeal requires us to resolve a question of law under the Fourth Amendment as it relates to passengers during a lawful traffic stop. This is not a case where two officers *simultaneously* conducted warrant checks against a driver and a passenger. *See, e.g.*, *State v. Roe*, 140 Idaho 176, 182, 90 P.3d 926, 932 (Ct. App. 2004). Instead, this is a case where a *single* officer conducted warrant checks against both the driver and passenger in an unknown order.

3

The State contends the Fourth Amendment permits an officer to, as a matter of course, run a warrant check on passengers as a "negligibly burdensome" precaution for officer safety during a traffic stop. The State argues this check does not unlawfully extend or "add time to" a traffic-stop in violation of *Rodriguez v. United States*, 575 U.S. 348 (2015), because it is part of the "mission" itself. In response, Wharton argues that the Fourth Amendment forbids such a bright line rule. In Wharton's view, checking passengers for outstanding warrants is not part of the traffic "mission" and unlawfully extends the traffic stop unless there is added reasonable suspicion, or the State justifies the intrusion as necessary to officer safety under the circumstances of that stop. For the reasons discussed below, we agree with the State.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. This guarantee is incorporated to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The Fourth Amendment protects people, not places, and forbids not all searches and seizures, but "unreasonable" searches and seizures. *State v. Hobson*, 95 Idaho 920, 924, 523 P.2d 523, 527 (1974) (citations omitted). "Evidence obtained in violation of the Fourth Amendment is subject to the exclusionary rule, which requires unlawfully seized evidence to be excluded from trial." *State v. Cohagan*, 162 Idaho 717, 720, 404 P.3d 659, 662 (2017). "The exclusionary rule encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." *Utah v. Strieff*, 579 U.S. 232, 237 (2016) (quotations omitted).

In *Rodriguez*, the United States Supreme Court clarified that the Fourth Amendment limits law enforcement to only those actions that are carefully tailored to a traffic stop's "mission." 575 U.S. at 354. The "mission" of a traffic stop has two pillars: "[1] to address the traffic violation that warranted the stop, . . . and [2] [to] attend to related safety concerns[.] *Id.*; *see also State v. Martinez*, 424 P.3d 83, 97 (Utah 2017) (noting the same). A traffic stop may last no longer than necessary to effectuate its mission, and the "[a]uthority for the seizure . . . ends when tasks tied to the traffic mission are—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354. "Accordingly, '[o]n-scene investigation into other crimes . . . [and] safety precautions taken in order to facilitate such detours' are outside the scope of a traffic stop's mission and must be justified by independent reasonable suspicion if they extend the duration of the stop." *State v. Hale*,

4

168 Idaho 863, 868, 489 P.3d 450, 455 (2021) (alternations original) (quoting *Rodriguez*, 575 U.S. at 356–57).

Under these pillars are two types of permissible law enforcement actions: (1) "ordinary inquires incident to the traffic stop"; and (2) "negligibly burdensome precautions" an officer may need to take "in order to complete his mission safely." *Rodriguez*, 575 U.S. at 355, 356 (alteration omitted). Ordinary inquiries include, but are not limited to, "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Id*. at 355; *see also Hale*, 168 Idaho at 868, 489 P.3d at 455 (verifying a driver's permission to operate a vehicle is also an ordinary inquiry incident to a traffic stop). Generally, "ordinary inquires" relate to pillar one (the traffic violation) because "[t]hese checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355.

In *Rodriguez*, the officer executed a traffic stop, obtained the driver's information, and returned to his patrol vehicle to check the driver for outstanding warrants. *Id*. at 351. The officer then returned to the stopped vehicle, asked the passenger for his identification, and again returned to the patrol vehicle to check the passenger for outstanding warrants. *Id*. After the checks were completed, the officer issued the driver a written warning. *Id*. at 352. However, the officer did not terminate the stop. *Id*. Instead, the officer continued the seizure until a second officer arrived on scene and conducted a dog sniff. *Id*. The Court took issue with the dog sniff as unlawfully extending the stop because it was not part of the traffic "mission." *Id.* at 355–56. More specifically, a dog sniff is not an "ordinary inquir[y] incident to a traffic stop" or a "negligibly burdensome precaution[]" related to officer safety in carrying out the traffic stop. *Id*. Instead, a dog sniff is an "on-scene investigation into other crime[]" that "detour[s]" from "the traffic mission and unlawfully prolong[s] the stop unless supported by independent reasonable suspicion." *Id*.

In this case, we must determine whether checking a passenger for outstanding warrants is part of the "mission" of a traffic stop.

The United States Supreme Court has consistently emphasized that "[t]raffic stops are especially fraught with danger to police officers[.]" *Id*. (quotations omitted); *see, e.g.*, *Adams v. Williams*, 407 U.S. 143, 148 n.3 (1972); *United States v. Robinson*, 414 U.S. 218, 234 n.5 (1973); *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977); *Michigan v. Long*, 463 U.S. 1032, 1048 (1983); *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997); *Arizona v. Johnson*, 555 U.S. 323, 330 (2009).

The Court has also "consistently eschewed" bright-line rules in the Fourth Amendment context, "instead emphasizing the fact-specific nature of the reasonableness inquiry." *See Ohio v. Robinette*, 519 U.S. 33, 40 (1996) (rejecting a per se rule for voluntariness in a consent to search case); *see also Florida v. Bostick*, 501 U.S. 429, 439 (1991) (rejecting a per se rule that questioning aboard a bus necessarily constitutes a seizure). However, this does not mean bright line rules under the Fourth Amendment can never be adopted. *Wilson*, 519 U.S. at 413 n.1. Indeed, the Court has adopted bright line rules for law enforcement practices during traffic stops using the Fourth Amendment balancing test.

For example, in *Mimms*, the Court held that officers, as a matter of course, may order a driver out of a vehicle during a traffic stop as a "precautionary" measure for officer safety. 434 U.S. at 110. At issue in *Mimms* was whether the "incremental intrusion" resulting from the order to exit the vehicle once it was lawfully stopped was "reasonable and thus permissible under the Fourth Amendment." *Id*. at 109. The Court held that it was "too plain for argument" that the government's justification—"the safety of the officer"—was "both legitimate and weighty." *Id*. It is "unreasonable to require that police officers take unnecessary risks in the performance of their duties." *Id*. (quoting *Terry v. Ohio*, 392 U.S. 1, 23 (1968)). One "inordinate risk" to an officer's safety exists whenever he or she "approaches a person seated in an automobile." *Mimms*, 434 U.S. at 110. Indeed, "a significant percentage of murders" against police officers occur when "officers are making traffic stops." *Id*. (quoting *Robinson*, 414 U.S. at 234 n.5). "According to one study, approximately 30% of police shootings occurred when a police officer approached a suspect seated in an automobile." *Mimms*, 434 U.S. at 110 (quoting *Adams*, 407 U.S. at 148 n.3).

Against this "legitimate and weighty" government interest the Court weighed the "intrusion into the driver's personal liberty occasioned not by the initial stop of the vehicle, which was admittedly justified, but by the order to get out of the car." *Mimms*, 434 U.S. at 110. The Court reasoned that the order to exit simply exposes "little more" of the driver's person than is already exposed during the stop. *Id*. This is "not a serious intrusion upon the sanctity of the person" or one that "rises to the level of a 'petty indignity.' " *Id*. (quoting *Terry*, 392 U.S. at 17). In weighing the competing interests at stake, the Court concluded that "[w]hat is at most a mere inconvenience cannot prevail when balanced against the legitimate concerns for the officer's safety." *Mimms*, 434 U.S. at 111. Accordingly, the Court held that law enforcement may, as a matter of course, order a

6

driver out of his or her vehicle during a traffic stop without violating the Fourth Amendment. *Id*. at 110.

Next, in *Wilson*, the Court employed the Fourth Amendment balancing test to extend the rule from *Mimms* and allow law enforcement to, as a matter of course, order *passengers* to exit a vehicle during a traffic stop. 519 U.S. at 415. On the government side of the scale, the Court reasoned that "the same weighty interest in officer safety [articulated in *Mimms*] is present regardless of whether the occupant of the stopped car is a driver or passenger." *Id*. Traffic stops are "dangerous encounters" for police officers, and "the fact that there is more than one occupant of the vehicle increases the possible sources of harm to the officer." *Id*. The Court reasoned this ultimately outweighs any incremental interest of an individual passenger, already stopped, in remaining inside, rather than outside, a vehicle for the duration of the stop. *Id*. at 414; *see also Brendlin v. California*, 551 U.S. 249, 258 (2007) (relying on *Wilson* and *Mimms* to hold that passengers in a traffic stop are "seized" under the Fourth Amendment).

In *Wilson*, the Court further reasoned that the "possibility of a violent encounter stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." 519 U.S. at 414. A passenger's motivation to "employ violence to prevent apprehension of such a crime is every bit as great as that of the driver." *Id*. Therefore, the "danger to an officer from a traffic stop is likely to be *greater* when there are passengers in addition to the driver in the stopped car." *Id*. (emphasis added). Because of this danger, "[t]he risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation." *Id*.

With the framework of *Mimms* and *Wilson* in mind, we now address the State's proposed practice of checking passengers for outstanding warrants. The "touchstone" of any analysis under the Fourth Amendment is "always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Mimms*, 434 U.S. at 108–09 (quoting *Terry*, 392 U.S. at 19). From this foundation, the Fourth Amendment balancing test looks at the "balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Mimms*, 434 U.S. at 108–09 (quotations omitted).

On the public interest side of the scale, the State advocates for a bright line rule that would allow law enforcement, as a matter of course, to check passengers for outstanding warrants during a traffic stop without reasonable suspicion particular to each passenger. For the State, this practice

7

increases officer safety related to the stop because it adds to "unquestioned command" of the overall traffic stop. *See Wilson*, 519 U.S. at 414; *Brendlin*, 551 U.S. at 257. The State is correct that the United States Supreme Court has made it consistently clear that the government has a legitimate and weighty interest in officer safety that can outweigh de minimus incremental intrusions against the occupants of an already lawfully stopped vehicle. *See Mimms*, 434 U.S. at 110; *Wilson*, 519 U.S. at 414–15; *see also Rodriguez*, 575 U.S. at 356; *Arizona*, 555 U.S. at 331. Because of the dangerous nature of a traffic stop, *Rodriguez* specifically allows negligibly burdensome safety precautions (i.e., the practice the State proposes here) so that an officer may carry out the traffic mission without unnecessary risks to all persons involved. 575 U.S. at 356.

On the personal liberty side of the scale, the intrusive effect of a passenger warrants check is minimal. As the Court indicated in *Mimms*, the intrusiveness of a proposed practice is not measured against the invasiveness of the overall seizure. 434 U.S. at 109. Instead, we measure the "incremental intrusion" resulting from a proposed practice against occupants that are already lawfully seized. *Id*; *see also Wilson*, 519 U.S. at 411–12. In this case, we do not think the State's proposed practice is "a serious intrusion upon the sanctity of the person" or one that "rises to the level of a petty indignity." *See Mimms*, 434 U.S. at 111 (quotations omitted). When a passenger is seized simply due to another's poor driving, a passenger can *reasonably* expect he or she may be subject to "some scrutiny" during the traffic stop. *Brendlin*, 551 U.S. at 257.

Moreover, a passenger warrant check is less intrusive than a constitutionally permissible order to exit the vehicle approved in *Wilson*. Unlike ordering a passenger to physically exit a vehicle, a warrant check does not intrude on the physical liberty of the passenger. Instead, a warrant check is often performed within the confines of a patrol vehicle and its computer. In addition, the check does not force a passenger to suffer serious embarrassment or indignity objectively noticeable to any public onlookers. The intrusive effect of checking passengers for outstanding warrants is "at most a mere inconvenience" and does not prevail "when balanced against the legitimate concerns for the officer's safety." *See Mimms*, 434 U.S. at 111.

In summary, the State's proposed practice of checking passengers for outstanding warrants during a traffic stop, as a matter of course, is a negligibly burdensome precaution for officer safety that the Fourth Amendment does not forbid. Accordingly, when warrant checks on passengers do occur, they do not unlawfully extend a stop under *Rodriguez*. The district court erred when it concluded the warrant check against Wharton unlawfully extended the stop absent a safety

justification particular to the stop. Accordingly, we reverse the district court's decision granting Wharton's motion to suppress.

## IV. CONCLUSION

We reverse the district court's decision granting Wharton's motion to suppress and remand this case for further proceedings.

Chief Justice BEVAN, Justice MOELLER, and Justice Pro Tem TROUT, CONCUR.

STEGNER, J., dissenting.

The majority's opinion drastically undercuts Fourth Amendment protections that should, in my view, be available to every person that utilizes our state's roadways. This Court's previous decision in *State v. Warren* left open "the question of whether a vehicle's passenger may be subjected to a criminal investigation when no reasonable suspicion exists to suspect her of criminal activity." ___ Idaho ___, ___, 499 P.3d 423, 429 (2021) (Stegner, J., concurring). Today, the majority wrongly decides that question. As a result, I respectfully dissent.

As I stated in *Warren*, "in order to lawfully search a passenger during an extended traffic stop, law enforcement must have reasonable suspicion of criminal activity *specific to that passenger* to subject her to a search." ___ Idaho at ___, 499 P.3d at 429 (Stegner, J., concurring) (italics in original). It is undisputed that Officer Torres did not have reasonable suspicion to investigate Wharton. Instead, the State requests—and the majority readily obliges—that we create a bright-line exception to the warrant requirement that allows police officers to require vehicle passengers to provide their identification, simply because providing such identification is "negligibly burdensome" to the passenger. In my view, the Fourth Amendment and the Idaho Constitution require more.

I recognize that, in general, "[a] seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). However, "the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Id.* (internal citations omitted). "Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" *Id.* (quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983)) (bracketed language in original). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*

9

I also recognize that, "[b]eyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (bracketed language in original). "Typically such inquiries involve checking the *driver's* license, determining whether there are outstanding warrants against the *driver*, and inspecting the automobile's registration and proof of insurance." *Id.* (Italics added.) Notably, "[t]hese checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Id.* The same cannot be said, however, of inquiries directed to a passenger. As noted by the United States Court of Appeals for the Ninth Circuit, "[t]he identity of a passenger . . . will ordinarily have no relation to a driver's safe operation of a vehicle." *United States v. Landeros*, 913 F.3d 862, 868 (9th Cir. 2019).

Like the Ninth Circuit, I would conclude that "[a] demand for a passenger's identification is not part of the mission of a traffic stop." *Id.* Because ascertaining Wharton's identity was not part of the stop's mission, the extension of the stop "violated the Fourth Amendment unless supported by independent reasonable suspicion." *Id.* Neither the State nor the majority suggest that Torres had reasonable suspicion to investigate Wharton. In my view, that should be the end of our inquiry. Accordingly, the district court's decision suppressing the evidence should be affirmed.

Instead, the majority (incorrectly) concludes that the "practice of checking passengers for outstanding warrants during a traffic stop, as a matter of course, is a negligibly burdensome precaution for officer safety that the Fourth Amendment does not forbid." I emphatically disagree with this conclusion. To avoid suppression, all the State was required to do in this case was to meet its burden in proving that Torres had reasonable suspicion to investigate Wharton. As noted by the district court, this is "not an onerous burden placed upon the State[.]" In fact, "reasonable suspicion" is the lowest burden required of the police when it comes to search and seizure. Today's decision further reduces the protection afforded by the Fourth Amendment. "Although [reasonable suspicion] must be more than a mere hunch, the level of suspicion required to create a reasonable suspicion is less than is necessary for probable cause and considerably less than proof by a preponderance of the evidence." *State v. Perez*, 164 Idaho 626, 628, 434 P.3d 801, 803 (2019) (quoting *State v. Russo*, 157 Idaho 299, 305, 336 P.3d 232, 238 (2014)). Rather than meet—or even attempt to meet—this minimal burden, the State argues that, due to the inherent risk to officer safety present during all traffic stops, police officers should always be allowed to demand a passenger's identification. I do not believe such a bright-line rule is warranted, much less

10

constitutional. The result of such a decision is to eviscerate important constitutional protections for those who are not suspected of wrongdoing. Today's decision simply creates a very wide net for the police which further restricts the ever narrowing protection of the Fourth Amendment.

The majority's acceptance of the State's argument is especially disappointing given the facts of this case. At the suppression hearing, Officer Torres testified that she did not witness any "furtive movements" as she approached the car, nor did she observe any weapons. Even *after* learning of the outstanding warrant, Torres never felt the need to search for weapons. Thus, the step the State argues is necessary for officer safety was not present in this case. Without any facts to support the further erosion of the Fourth Amendment, the majority nevertheless creates a new exception to protections formerly afforded by the Fourth Amendment. To impose a bright-line rule on the basis of officer safety in a case where officer safety was of no concern only rewards the State for failing to meet its minimal burden under our reasonable suspicion jurisprudence.

To be clear, I do not disagree that officer safety is indeed an important concern. However, as explained by the Supreme Court of the United States,

> officers have other, independent bases to search for weapons and protect themselves from danger. For example, they may order out of a vehicle both the driver and any passengers; perform a "patdown" of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous; conduct a "*Terry* patdown" of the passenger compartment of a vehicle upon reasonable suspicion that an occupant is dangerous and may gain immediate control of a weapon; and even conduct a full search of the passenger compartment, including any containers therein, pursuant to a custodial arrest.

*Knowles v. Iowa*, 525 U.S. 113, 117–18 (1998) (internal citations omitted). There are myriad other ways for police officers to ensure their safety without creating a bright-line exception which swallows an additional protection of the Fourth Amendment. "It does no disservice to police officers . . . to insist upon exercise of reasoned judgment. Adherence to neutral principles is the very premise of the rule of law the police themselves defend with such courage and dedication." *Maryland v. Wilson*, 519 U.S. 408, 423 (1997) (Kennedy, J., dissenting).

The ramifications of the majority's decision should be gravely concerning to everyone who values the citizens' Fourth Amendment guarantee to be free from unreasonable searches and seizures. As a result of the decision today, every passenger in every vehicle lawfully stopped on an Idaho roadway must deliver their identification so that the officer may run a warrant check, irrespective of reasonable suspicion. The passenger will be subjected to this invasion of privacy

11

even though she bears no fault for the driving infraction. This is true regardless of whether the passenger is riding in a friend's or family member's vehicle, a taxi, or a ride-hailing service. The passenger will be subjected to this invasion of privacy *even though she does not even know the driver of the car*. In my view, "[t]he Constitution should not be read to permit law enforcement officers to order innocent passengers about simply because they have the misfortune to be seated in a car whose driver has committed a minor traffic offense." *Wilson*, 519 U.S. at 420–21 (Stevens, J., dissenting). Accordingly, I respectfully dissent.