**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49608**

| | |
|---|---|
| RACHAEL LOUISE MEYER, | ) |
| | ) **Filed: June 6, 2023** |
| Petitioner-Appellant, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) |
| STATE OF IDAHO, | ) |
| | ) |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant. Andrea W. Reynolds argued.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

LORELLO, Chief Judge

Rachael Louise Meyer appeals from the judgment summarily dismissing her petition for post-conviction relief. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Meyer was a passenger in a vehicle stopped for a traffic violation. After obtaining the driver's consent to a search of the vehicle, officers directed the driver and Meyer out of the vehicle. Meyer then agreed to set her "large purse" down outside the vehicle as a safety precaution in lieu of consenting to a search of the purse or leaving it in the vehicle. However, Meyer subsequently consented to "a quick search" of the purse for weapons to obtain permission from officers to retrieve a lighter from within. The ensuing search yielded a smaller bag containing heroin,

1

resulting in the State charging Meyer with trafficking in heroin. After Meyer filed an unsuccessful motion to suppress that argued the search of her purse exceeded the scope of her consent, a jury found her guilty of the charged offense. This Court affirmed Meyer's judgment of conviction and sentence in an unpublished opinion. *State v. Meyer*, Docket No. 46014 (Ct. App. Dec. 12, 2019).

Meyer filed a pro se petition for post-conviction relief. With the aid of appointed counsel, Meyer filed an amended petition that alleged her trial counsel was ineffective by failing to present all "meritorious grounds in the motion to suppress." Specifically, Meyer alleged that trial counsel was ineffective by failing to argue that Meyer was unlawfully seized upon being separated from her purse, tainting her subsequent consent to search. The State and Meyer each moved for summary disposition. The district court summarily dismissed Meyer's petition for post-conviction relief, concluding her motion to suppress would have been denied even if trial counsel had argued Meyer's consent to search was tainted. Meyer appeals.

## II.

## STANDARD OF REVIEW

On appeal from an order of summary dismissal in a post-conviction case, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). Over questions of law, we exercise free review. *Rhoades v. State*, 148 Idaho 247, 250, 220 P.3d 1066, 1069 (2009); *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## III.

## ANALYSIS

Meyer argues that the district court erred in summarily dismissing her petition for post-conviction relief because the suppression argument proposed therein would have been meritorious and, as such, she is entitled to post-conviction relief on her ineffective assistance of counsel claim. The State responds that the district court correctly concluded that Meyer's suppression argument failed because officers could lawfully separate Meyer from her purse "without suspicion of specific danger." We hold that Meyer has failed to show error in the

2

summary dismissal of her post-conviction petition because the suppression motion she alleged counsel was ineffective for not pursuing would not have been granted.

A claim of ineffective assistance of counsel may properly be brought under the Uniform Post-Conviction Procedure Act. *Barcella v. State*, 148 Idaho 469, 477, 224 P.3d 536, 544 (Ct. App. 2009). To prevail on an ineffective assistance of counsel claim, the petitioner must show that the attorney's performance was deficient and that the petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). To establish a deficiency, the petitioner has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Knutsen v. State*, 144 Idaho 433, 442, 163 P.3d 222, 231 (Ct. App. 2007). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the proceeding would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Knutsen*, 144 Idaho at 442, 163 P.3d at 231.

In a post-conviction proceeding challenging an attorney's failure to pursue a motion in the underlying criminal action, the district court may consider the probability of success of the motion in question in determining whether the attorney's inactivity constituted ineffective assistance. *Lint v. State*, 145 Idaho 472, 477, 180 P.3d 511, 516 (Ct. App. 2008). Where the alleged deficiency is counsel's failure to file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Lint*, 145 Idaho at 477-78, 180 P.3d at 516-17.

Meyer's petition alleges that her trial counsel was ineffective by failing to present "all legally viable and meritorious claims" in a motion to suppress. To support this ineffective assistance claim, Meyer further alleged that she was a passenger in a vehicle stopped for a "signal infraction." After obtaining the driver's consent for a search, officers directed both the driver and Meyer to exit the vehicle to facilitate an exterior drug dog sniff. Upon exiting the vehicle, Meyer alleges an officer gave her the option of leaving her purse in the vehicle, setting it aside somewhere, or consenting to it being searched for weapons. Meyer elected to set the purse aside about five feet from the passenger door but later consented to a search so she could retrieve a lighter from within. During the search, the officer found a small cloth bag containing heroin inside the purse.

After the State charged Meyer with trafficking in heroin, she filed an unsuccessful motion to suppress the heroin found in her purse, arguing only that the traffic stop was unlawfully extended to conduct the dog sniff and that the search of the small cloth bag exceeded the scope of her consent.

Meyer further supported her petition with affidavits from her trial counsel.[1] In these affidavits, Meyer's trial counsel aver that they did not argue officers could not search Meyer's purse because "it was entitled to as much privacy and freedom from search and seizure" as Meyer. The affidavits reveal that trial counsel believed that officers "could legally forbid" Meyer from retrieving the lighter from her purse "absent a reciprocal consent to search for weapons regardless of any further reasonable articulable suspicion that she was presently armed and dangerous." The affidavits further indicate that their decision not to brief or argue this issue was neither strategic nor tactical.

The district court concluded the materials Meyer submitted "failed to establish a *prima facie* case of ineffective assistance of counsel." In reaching this conclusion, the district court focused its analysis on whether Meyer raised a genuine issue of material fact regarding the potential success of her proposed suppression argument. The district court began by rejecting Meyer's contention that *State v. Newsom*, 132 Idaho 698, 979 P.2d 100 (1998), and *State v. Ross*, 160 Idaho 757, 378 P.3d 1056 (Ct. App. 2016), compelled the resolution of her proposed suppression argument in her favor. The district court reasoned that *Newsom* was distinguishable because, unlike the officer in that case, officers involved with Meyer did not create a right to search her purse by ordering her to leave it in a vehicle subject to a search incident to arrest. Regarding *Ross*, the district court reasoned that case was inapposite because Meyer was required to consent to a search of her purse to access it *during* a lawful traffic stop--not after the stop had concluded as in *Ross*.

Subsequently, the district court analyzed whether the choice officers gave Meyer regarding her purse resulted in an unlawful seizure. In this regard, the district court observed that officers may "take certain precautions to ensure officer safety" during a lawful traffic stop because "the

---

[1] Meyer's petition alleges that two attorneys represented her during the underlying criminal case. One attorney represented Meyer through the filing of her motion to suppress but was substituted with a second attorney for trial and sentencing.

4

government's officer safety interest stems from the mission of the stop itself." One such precaution the district court recognized as permissible is "ordering all the occupants out of a vehicle regardless of any reasonable suspicion that the occupants are dangerous." Analogizing to a directive to exit a vehicle, the district court further determined that "limiting a person's access to her purse or bag during a traffic stop is a reasonable and negligibly burdensome precaution for officer safety." In further support of this determination, the district court cited *People v. Walker*, 995 N.E.2d 351 (Ill. App. Ct. 2013), summarizing the relevant aspect of the case as follows:

> In *People v. Walker*, the Illinois appellate court noted that officers were entitled to ensure their own safety, even in the absence of a reason to believe the defendant was armed and dangerous, by preventing the defendant from accessing her purse during the [*Terry v. Ohio*, 392 U.S. 1 (1968)] stop. However, the subsequent search of the purse was invalid because officers lacked an objectively reasonable belief they were in danger or the defendant was armed with a weapon.

(Citations omitted). Applying the above described legal standards, the district court reasoned:

> In this case, [the officer] took reasonable measures to ensure officer safety during the stop. Namely, he asked Meyer to place the bag in a location in which she would not have access. [The officer] did not create a right to search [Meyers'] purse. It was a reasonable and negligibly burdensome precaution to allow officers to complete the traffic stop safely. The purse would not have been searched absent Meyer's further actions. This was not a safety measure "aimed at investigating crimes unrelated to roadway safety for which the officers lack[ed] reasonable suspicion." The purse would not have been searched absent Meyer's conduct and consent.
>
> Under these facts and circumstances, [the officers] were entitled to ensure their own safety, even without belief Meyer was armed and dangerous, by preventing her from accessing her purse during the traffic stop. The condition that they search the purse if Meyer wanted access to it during the traffic stop was reasonable. If Meyer could have waited to smoke a cigarette until the traffic stop were concluded, then her purse would not have been searched, and she would have been free to take it with her at the conclusion of the stop.

(Citations omitted). Consequently, the district court determined that, even if Meyer's trial counsel had argued that her consent to the search of her purse was invalid due to an allegedly unlawful seizure, her motion to suppress would have been denied. Accordingly, the district court concluded

5

that Meyer's ineffective assistance of counsel claim failed under both prongs of *Strickland* and summarily dismissed the petition for post-conviction relief.[2]

Meyer does not dispute that officers lawfully stopped the vehicle in which she was a passenger. Nor does Meyer argue that they could not continue to detain her while conducting a consent search of the vehicle and prevent her from reaching inside her purse during that time. Rather, Meyer faults the district court's summary dismissal decision for relying upon the "conclusion that the officer could lawfully order [Meyer] to dispossess herself of her purse." According to Meyer, the officer could not. Meyer asserts that she instead "should have been permitted to maintain possession of her purse throughout the duration of the stop, at least absent reasonable suspicion she was armed and dangerous." Essentially, Meyer urges application of a standard pertinent to searches[3] to the seizure of her purse. Meyer asserts she was unlawfully seized upon being separated from her purse, thereby rendering her subsequent consent to search invalid, because officers were not aware of sufficient facts to justify a search under the standard she contends applies. We disagree.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven

---

[2] Meyer challenges the district court's citation to *Walker*, arguing the statements approving of officers separating Walker from her purse in the absence of reasonable suspicion she was armed and dangerous are dicta. In response to the State's contention that Meyer failed to cite authority that reliance on dicta constitutes reversible error, Meyer recasts her argument in her reply brief, indicating that "it is not the citation of dicta that is reversible error; rather, it [is] the lack of citation to any controlling or persuasive authority." This argument is meritless. The district court cited relevant legal authority in summarily dismissing Meyer's petition, in particular when recognizing that officers may order passengers from a vehicle during a traffic stop as a matter of course. Moreover, even if dicta, the relevant portions of *Walker* may be considered persuasive authority. *See* BLACK'S LAW DICTIONARY 1240 (10th ed. 2014) (indicating that, by definition, dictum may be considered persuasive authority).

[3] *See State v. Bishop*, 146 Idaho 804, 818, 203 P.3d 1203, 1217 (2009) (observing that "a limited pat-down search, or frisk," is permissible when officers have reason to believe an individual is armed and dangerous).

6

contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). This "temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop. Normally, the stop ends when the police have no further need to control the scene and inform the driver and passengers they are free to leave." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

During a lawful traffic stop, officers may engage in both the "ordinary inquiries incident to the traffic stop" and "negligibly burdensome precautions" necessary "to complete [their] mission safely." *Rodriguez v. United States*, 575 U.S. 348, 355-56 (2015); *see also State v. Wharton*, 170 Idaho 329, 332, 510 P.3d 682, 685 (2022). Such negligibly burdensome precautions include, as a matter of course, ordering all the occupants of a vehicle to exit and obtaining their identification to conduct a warrants check. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) (holding that officers may order passengers to exit a vehicle during a lawful traffic stop); *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (holding that officers may order the driver to exit a vehicle during a lawful traffic stop); *Wharton*, 170 Idaho at 335, 510 P.3d at 688 (holding that officers may check passengers for outstanding warrants during a traffic stop).

In establishing these bright-line rules for traffic stops, appellate courts have applied the familiar Fourth Amendment balancing test that weighs the "balance between the public interest and the individual's right to personal security free from arbitrary interference by officers." *Wilson*, 519 U.S. at 413-15; *see also Mimms*, 434 U.S. at 110-11; *Wharton*, 170 Idaho at 335, 510 P.3d at 687-88. The "touchstone" of this Fourth Amendment analysis is "always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Mimms*, 434 U.S. at 108-09 (quoting *Terry*, 392 U.S. at 19). With this framework in mind, we consider the practice of restricting a passenger's access to a purse when ordered out of a vehicle during a lawful traffic stop.

On the public interest side of the scale rests the "legitimate and weighty" government interest in officer safety. The United States Supreme Court has recognized that traffic stops are "dangerous encounters" for police, and the presence of "more than one occupant of the vehicle increases the possible sources of harm" to officers. *Wilson*, 519 U.S. at 413. This risk arises from the possibility that officers might discover evidence of more serious crimes during a routine traffic stop. *Id.* at 414. Any occupant of a vehicle can harbor a motivation to use violence to avoid

7

apprehension of such a crime. *Id.* Accordingly, both the United States Supreme Court and the Idaho Supreme Court have recognized that officer safety interests "can outweigh de minimis incremental intrusions against the occupants of an already lawfully stopped vehicle." *Wharton*, 170 Idaho at 334, 510 P.3d at 687.

Furthermore, and unlike the already dangerous routine traffic stops in *Mimms*, *Wilson* and *Wharton*, the risk of violence is all the more acute where officers are lawfully conducting a drug dog sniff or searching the interior of a vehicle. In such circumstances not only will officers' focus be split between the vehicle and its occupants, but those occupants will be aware of the apparent imminent discovery of evidence of a more serious offense. Even during a consensual search the risk of violence remains as suspects sometimes consent to searches despite their apparent awareness that the target of the search contains contraband. *See State v. Holcomb*, 128 Idaho 296, 298, 912 P.2d 664, 666 (Ct. App. 1995) (holding that the defendant voluntarily consented to a search of his vehicle despite the presence of a "marijuana pipe" in the driver's side "door-pocket" and awareness that officers suspected he was using drugs in the vehicle).

On the personal security side of the scale is the intrusion upon a passenger's possessory interest in personal effects. However, the critical issue here is not the intrusiveness of the overall seizure, but rather the "incremental intrusion" occasioned by the proposed practice in relation to an individual already subject to a lawful seizure. *Mimms*, 434 U.S. at 332. Intrusions upon an individual's possessory interest in personal effects can vary in both nature and extent. *United States v. Place*, 462 U.S. 696, 705 (1983). As stated, an officer seizes the occupants of a vehicle during a lawful traffic stop. *Prouse*, 440 U.S. at 653; *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. By doing so, the officer also incidentally seizes any effects the person has in his or her possession. *See Place*, 462 U.S. at 715 (Brennan, J., concurring) (observing it is obvious that "an officer cannot seize a person without also seizing the personal effects that the person has in his [or her] possession at the time"). Such incidental seizure of a person's effects does not violate the Fourth Amendment if the person's seizure is justified. Thus, a passenger's personal effects are already subject to a level of governmental intrusion by virtue of being in the passenger's possession when a traffic stop occurs. Consequently, a passenger can reasonably expect *some* restrictions on accessing property during the stop. This is especially true when the personal property at issue is a purse that could conceal weapons. The ostensible purpose of removing passengers from a vehicle during a traffic

8

stop is to allow officers to monitor the passengers while also separating them from any dangerous articles potentially present in the vehicle. Allowing an occupant ordered from a vehicle to maintain possession of personal effects that could conceal weapons diminishes the safety benefit garnered by lawfully removing the occupant from the vehicle.

Moreover, requiring a passenger ordered out of a vehicle during a lawful traffic stop to set aside a purse absent permission to search it is less intrusive than the passenger's initial removal or requiring the passenger to submit to a warrants check. Unlike ordering passengers to exit a vehicle, requiring them to set aside a purse does not result in an additional incremental intrusion on their personal liberty. As noted, officers may detain passengers for the lawful duration of a stop, so requiring them to set aside personal effects will not by itself prevent the passengers from leaving the scene. At the same time, the warrants check approved in *Wharton* resulted in the passenger relinquishing one of her personal effects (presumably a driver's license) to an officer for the purpose of conducting an inquiry that would reveal more information about her (*i.e.*, whether she had active warrants). *Wharton*, 170 Idaho at 331, 510 P.3d at 684. More importantly, unlike a warrants check, restricting a passenger's access to a purse after being ordered from a vehicle absent consent to search the purse will not necessarily reveal any information about the passenger. As recognized in *Newsom*, a passenger's purse is "entitled to as much privacy and freedom from search and seizure as the passenger." *Newsom*, 132 Idaho at 700, 979 P.2d at 102. Despite Meyer's contrary contentions, requiring her to set aside her purse was not equivalent to searching it or compelling her to remove an outer layer of clothing (like a coat), either of which would reveal information or items otherwise concealed from the officers. Nor did officers create a right to search Meyer's purse by requiring her to set it aside unless she consented to it being searched. To the contrary, as the district court noted, Meyer's purse would not have been searched if she "could have waited to smoke a cigarette until the traffic stop were concluded."

In sum, requiring a passenger lawfully ordered to exit a vehicle during a lawful traffic stop to set aside a purse, absent consent to search it, is a mere inconvenience eclipsed by legitimate officer safety concerns. *See Mimms*, 434 U.S. at 111. Thus, engaging in such a procedure, as a matter of course, is a negligibly burdensome precaution for officer safety permissible under the Fourth Amendment. Accordingly, Meyer has failed to show that the district court erred by concluding that separating her from her purse did not result in an unlawful seizure. Therefore, the

9

motion to suppress Meyer claims counsel was ineffective for not pursuing would have been denied. Meyer has failed to show the district court erred in summarily dismissing her post-conviction petition.

## IV.
## CONCLUSION

Meyer has failed to show error in the summary dismissal of her ineffective assistance of counsel claim. Accordingly, the district court's judgment summarily dismissing Meyer's petition for post-conviction relief is affirmed.

Judge GRATTON and Judge HUSKEY, **CONCUR**.