# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 50609

|  |  |  |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | Filed: July 12, 2024 |
| Plaintiff-Respondent, | ) | |
| | ) | Melanie Gagnepain, Clerk |
| v. | ) | |
| | ) | THIS IS AN UNPUBLISHED |
| TAYLOR RENEE DOBSON, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel Hoagland, District Judge.

Judgment of conviction for possession of a controlled substance, affirmed.

Ferguson Durham, PLLC; Craig H. Durham, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge Pro Tem

Taylor Renee Dobson appeals from her judgment of conviction for possession of a controlled substance. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Boise police officers on patrol after midnight observed a parked vehicle with its lights on in a hotel parking lot. A records check on the license plate revealed that the registration was suspended. The vehicle left the hotel parking lot and the officers initiated a traffic stop. One of the officers spoke with the driver who said he had applied for a "waiver" for his registration. For the next two and one-half minutes the driver looked for his insurance information as well as information about his registration on his cell phone. Dobson, who was the passenger in the vehicle, told the officers that she had just gotten off work at a restaurant at the hotel. The driver said he was taking her home. One of the officers asked if there were any weapons in the vehicle and the

driver said there was a knife in the backseat. In response to an officer's questions the driver said he was on parole for possession of a controlled substance and was in good standing. One officer then nodded to the other to indicate that he should call for a drug dog. The driver then found his insurance information on his cell phone and showed it to one of the officers but could not find any information about his registration. The officers then asked both occupants for identification. The driver gave his driver's license and Dobson gave her state ID card to one of the officers. The driver said his registration was suspended because of a failed emissions test. Four minutes and twenty seconds into the traffic stop one of the officers returned to the patrol vehicle to write a citation for the expired registration. Once in the patrol vehicle, the officer turned off the audio on his body camera and placed it on the dashboard to function as a dash camera because, as he testified, there have been cases where canine officers did not turn on their body cameras and the investigation was harmed by that omission. The officer testified that he only deviated from conducting record checks for both Dobson and the driver and writing a citation for the expired registration to periodically glance up to make safety checks. He could not recall whether his records request was placed in a queue.[1] He did not recall how long it took to get a response on the record checks from dispatch but testified that he had not finished writing the citation when the dog arrived, about seventeen minutes after the traffic stop was initiated. The officer was in his patrol vehicle for twelve minutes and thirty-five seconds until the dog alerted indicating the presence of drugs in the vehicle. A search of the vehicle revealed controlled substances and paraphernalia. Dobson was charged with possession of methamphetamine. She filed a motion to suppress arguing that the officers unlawfully extended the traffic stop to allow the drug dog to arrive and that the dog's alert was not reliable. Her motion to suppress was denied. She then entered a conditional *Alford*[2] plea to the charge preserving her right to appeal. She now appeals from the district court's denial of her motion to suppress arguing that the officers unlawfully extended the traffic stop.

---

[1]     The officer testified that sometimes on Friday and Saturday nights and other busy times record requests from officers are not answered immediately but placed in a queue. The stop occurred early on a Sunday morning.

[2]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The stop of a vehicle by law enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The seizure of a vehicle's occupants in order to investigate a traffic violation is reasonable under the Fourth Amendment so long as the seizing officer had reasonable suspicion that a violation had occurred. *See Rodriguez v. United States*, 575 U.S. 348, 353 (2015). However, such a seizure can become unlawful if it is prolonged beyond the time that is reasonable to complete the original mission for the seizure. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Therefore, the seizure becomes unlawful when tasks associated with investigating the traffic infraction are, or reasonably should have been, completed. *Rodriguez*, 575 U.S. at 349.

The Idaho Supreme Court has interpreted the holding in *Rodriguez* to declare that when an officer abandons the original purpose of the investigation, regardless of duration of time, the officer no longer has reasonable suspicion supporting the seizure. *State v. Linze*, 161 Idaho 605, 607-08, 389 P.3d 150, 152-53 (2016). When the officer abandons the original purpose of the stop, the officer has initiated a new seizure for which independent reasonableness under the Fourth Amendment is required. *Id.* Like a *Terry v. Ohio*, 392 U.S. 1 (1968) stop, the "tolerable duration of police inquiries in the traffic-stop context" is measured in reference to the stop's "mission."

3

*Caballes*, 543 U.S. at 407. Because waiting for a drug dog to arrive and conducting a drug-dog sniff are not part of the purpose or "mission" of a traffic stop,[3] the drug dog must arrive and the sniff must be conducted, before the tasks tied to the stop are--or should have been--reasonably completed. Of course, if the drug dog alerts signaling the presence of a controlled substance, reasonable suspicion may then exist to extend the stop. *State v. Howard*, 169 Idaho 379, 383, 496 P.3d 865, 869 (2021). The critical question is whether the dog sniff prolonged or added time to the overall duration of the traffic stop. *State v. Karst*, 170 Idaho 219, 227, 509 P.3d 1148, 1156 (2022). Even a *de minimis* detour or deviation from the purpose of the stop violates the Fourth Amendment. *Id.* (holding delay of nineteen seconds constitutionally impermissible).

Dobson argues that the officers unlawfully extended the traffic stop to allow time for the drug dog to arrive. The district court found that the drug-dog sniff occurred and that the drug dog alerted before the purpose of the traffic stop was complete. The district court further found that neither the request for the drug dog nor the time spent waiting for the dog to arrive added time to the stop. Dobson contends that the officer's testimony about how long it took him to complete the tasks related to the stop was not credible. Specifically, she focuses on the twelve minutes and thirty-five seconds after the officer went to his patrol car to write the citation before the dog arrived. The district court found the officer's testimony to be credible. The district court recognized that, at face value, "twelve and a half minutes seems like a long time to write a citation solely for an expired registration" and that by muting his body camera and using it as a dash camera the officer effectively prevented the district court from "making an objective and independent evaluation of his actions" to determine whether he remained committed to the original purpose of the traffic

---

[3]     A traffic stop's mission includes, but is not limited to, addressing the traffic violation that precipitated the stop, determining whether to issue a traffic citation, and making ordinary inquiries incident to the stop, such as checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobiles registration and proof of insurance. Because traffic stops are fraught with danger to police officers, an officer may take certain negligibly burdensome precautions in order to complete his mission safely, such as asking for the driver and passenger to exit the vehicle and conducting a criminal records check. *Rodriguez*, 575 U.S. at 356; *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). However, investigation into other crimes is outside the scope of the stop's mission and must be justified by independent reasonable suspicion if it extends the duration of the stop. *Rodriguez*, 575 U.S. at 356-57.

4

stop." The district court found that the officer's explanation for placing his body camera to function as a dash camera was reasonable but that the officer's decision to mute his body camera was "not as reasonable." The district court also found that the officer did not recall whether his request for records was placed in a queue or how much of the citation he had completed before the drug dog alerted. The district court stated that these facts undermine his credibility. On the other hand, the district court found that the officer testified "consistently and unequivocally that he never deviated from the purpose of the traffic stop except to look up for officer safety purposes" and that "twelve and a half minutes is within the estimated amount of time (15 minutes) it takes [the officer] to 'complete the entire process' to write a citation for a suspended registration." The district court found that there was "no objective evidence indicating [the officer] deviated from the purpose of the stop," and "there was no significant discrepancy between his testimony at the preliminary and evidentiary hearings," and that Dobson had presented "no evidence (such as police reports, dispatch logs, etc.) indicating [the officer] delayed writing the citation while waiting for the drug sniffing canine to arrive." The district court concluded: "On balance, the Court finds the facts weigh slightly more in favor of finding that [the officer's] testimony was credible and that he did not deviate from conducting a record check and writing the citation. Thus, the Court concludes the traffic stop was not unreasonably prolonged to conduct a drug dog sniff."

This Court will not substitute its view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998). The district court is the arbiter of conflicting evidence; its determination of the weight, credibility, inference, and implications thereof will not be supplanted by this Court's impressions or conclusions from the written record. *State v. Howard*, 155 Idaho 666, 673, 315 P.3d 854, 861 (Ct. App. 2013). The district court carefully weighed the evidence before it and drew reasonable inferences. Its findings are supported by substantial competent evidence.

For the first time on appeal, Dobson argues that the stop was unlawfully extended because the officer took Dobson's identification (along with the driver's) and ran an allegedly unnecessary criminal check on her. Dobson asserts that, because she was a passenger in the car and there was no reasonable suspicion that she had committed a crime, taking her identification to investigate her record was divorced from the mission of the stop, which was to determine whether the car's

registration was valid and to cite the driver if it was not. Dobson cites *Karst*, 170 Idaho 219, 509 P.3d 1148, which, as noted *infra*, prohibits even *de minimis* unjustified extensions of a traffic stop. Dobson did not raise this argument in her suppression motion or at the hearing on the motion. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Dobson's own argument on this issue illustrates why it should not be addressed on appeal. Dobson acknowledges that the Idaho Supreme Court in *State v. Wharton*, 170 Idaho 329, 510 P.3d 682 (2022) held that an officer may run a passenger's identification through a patrol car's computer system to check for active warrants because such a check is a negligibly burdensome precaution for officer safety that does not unlawfully extend a traffic stop. Dobson argues that the officer in this case "ran a 'records check' not just a 'warrants check,' presumably meaning a full criminal background check for both [Dobson and the driver]." However, no record was developed in the district court on this issue because it was not raised. All that can be gleaned from the transcript of the suppression motion is that the officer requested a "records check" for Dobson and the driver using the officer's radio (not the patrol car's computer system) while he was in his vehicle before the drug dog alerted. Had the issue been raised, perhaps the record would include information about the nature of the "records check" and other facts to support Dobson's argument. Because the issue was not raised in the district court, we will not address it on appeal.

## IV.

## CONCLUSION

Dobson has failed to show error in the district court's denial of her motion to suppress. Therefore, Dobson's judgment of conviction for possession of a controlled substance is affirmed.

Judge HUSKEY and Judge TRIBE, **CONCUR**.